# FOR PUBLICATION



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| AARON LEE, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A02-1108-CR-784 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt Eisgruber, Judge
Cause No. 49G01-1006-FB-48976

**March 13, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Aaron Lee appeals his convictions for criminal confinement as a class B felony[1] and intimidation as a class C felony.[2] Lee raises one issue, which we revise and restate as whether the trial court abused its discretion by rejecting Lee's proposed instruction regarding the presumption of innocence. We reverse and remand.

The relevant facts follow. In the afternoon of June 19, 2010, Lee entered Patty's Show Club, which was a strip club located in Indianapolis, Indiana, and met K.F., who was working her first day at the club. Lee paid K.F. for a private dance which lasted for one song. Before K.F. left Patty's with another dancer to go to a bar, Lee asked K.F. for her phone number and she gave it to him because Lee "seemed like . . . a really nice guy." Transcript at 72. When the bartender would not serve K.F., who was not yet twenty-one years old, alcohol, K.F. called her mother to ask for her to pick her up. Her mother informed K.F. that she could not pick her up, and she told K.F. that "this number had been calling" and K.F. assumed it was Lee "because we had planned on going to get something to eat," and K.F. then asked her mother to give her the number. Id. K.F. called Lee and Lee agreed to pick her up from the bar.

When Lee arrived, K.F. asked him to take her to her house to change clothes and to speak to her mother, and Lee agreed. Lee reluctantly entered the house with K.F. and briefly spoke with K.F.'s mother while K.F. changed clothes. Lee and K.F. then stopped at a liquor store, Lee purchased alcohol for them, and the two drove to a Denny's restaurant. K.F. started to exit the vehicle, but Lee told her that "he was just going to run

[1] Ind. Code § 35-42-3-3 (Supp. 2006).

[2] Ind. Code § 35-45-2-1 (Supp. 2006).

in and get it, which [she] didn't understand" because she "didn't know if . . . he wanted to just, you know, hang out for a second and then leave because he had to be somewhere." Id. at 78. Lee then drove to an EconoLodge hotel where he had a room and asked if K.F. would like to "come in and hang out," and K.F. thought that it was "kind of weird that he wanted to hang out at a hotel," and she began "texting [her] friends . . . to see if they wanted to hang out so that . . . [she] wouldn't be . . . alone with someone . . . ." Id. at 80. The two then proceeded to the hotel room.

After talking in the room and drinking alcohol, Lee and K.F. drove to an apartment to purchase marijuana for K.F, and they then went back to the room. K.F. continued to text friends in an attempt to have them pick her up because she did not plan to spend the night at the hotel. At some point, Lee began to ask K.F. to have sex with him, and K.F. responded that they "just met" and that she was "just trying to get to know [Lee]," but Lee continued to ask. Id. at 88. Lee attempted to kiss K.F. which made her want to leave the hotel, and she started to gather her belongings including her purse and flip flops.

As K.F. bent down to pick up her belongings, Lee asked her if she had "ever played Russian Roulette," and when she looked at Lee he had a gun pointed at her face at a distance of about seven or eight feet. Id. at 95. Lee then told K.F. that she "had five seconds to take [her] clothes off or he was going to f------ kill" her and he began to count, but K.F. did not comply. Id. at 97. After repeated threats from Lee, K.F. began to cry, Lee asked her to calm down and told her that he loved her, and the two then began to talk. K.F. did not try to leave the hotel room because she "thought that if [she] screamed

3

or if [she] tried to run out . . . that [she] could possibly lose [her] life," and Lee also at one point slapped K.F.'s cell phone from her hand when she attempted to dial 911. Id. at 100. After about twenty minutes of talking, K.F. convinced Lee to give her the ammunition and clip for the gun. Lee again asked K.F. if they could have sex, and K.F. agreed but told Lee that she wanted to smoke a cigarette first, and when the two exited the room K.F. made sure the door completely closed because she had observed that the room key was still on the table in the room.

While outside, Lee apologized to K.F., and after about ten minutes he realized that he could not reenter the room and the two walked towards the lobby to obtain another key. While walking, K.F. "turn[ed] around and [took] off running," and she eventually ran back to the Denny's restaurant. Id. at 107. K.F. then spoke with the manager, told him that "someone had tried to kill" her, and showed the manager the clip and ammunition. Id. at 108. The manager called 911. K.F. also called the same person who had sold her marijuana earlier and who was her "best friend" because she "wanted a male" to "protect" her. Id. at 109. Lee soon after entered the Denny's, but the manager told him to leave, which Lee did. Subsequent to the police arriving, Lee returned with K.F.'s cell phone, and the police arrested him.

On June 23, 2010, the State charged Lee with Count I, criminal confinement as a class B felony; Count II, intimidation as a class C felony; Count III, intimidation as a class C felony; Count IV, pointing a firearm as a class D felony; and Count V, interference with reporting a crime as a class A misdemeanor. On July 18 and 19, 2011, a jury trial was held in which facts were presented consistent with the foregoing. At trial,

4

K.F. testified that she initially lied to the police officer, telling the officer that she "had known him for a couple of weeks and [] had seen him at . . . a couple of parties, because [she] was too embarrassed" to admit that she was working at a strip club, and that even after the officer told K.F. that she thought K.F. was lying, K.F. continued to lie. Id. at 111. K.F. also indicated that she had told the Denny's manager that she had known Lee for a couple of months, and that she had stated this to the manager because she was embarrassed. The prosecutor asked K.F. about lab results which showed that Lee's DNA had been found on her underwear, and K.F. testified that it could have been a result of the private dance she had performed for Lee at the strip club earlier on the date in question. K.F. also testified that, about thirty minutes later, at the police station, she "redid the statement and [she] told [the officer] how [she] actually met [Lee]." Id. at 116.

At the close of trial, Lee tendered a final instruction regarding the presumption of innocence which the court refused to give because it believed that other instructions it was giving "fulfill[ed] the need of what [the] intention is in these instructions, that the burden's on the State to prove it." Id. at 451. The jury found Lee guilty of Counts I and II and not guilty on Counts III-V. On August 5, 2011, the court sentenced Lee to eight years with two years suspended on Count I, criminal confinement as a class B felony, and six years on Count II, intimidation as a class C felony, and it ordered those sentences to be served concurrently with each other. Accordingly, Lee was sentenced to an aggregate term of eight years with two years suspended.

The issue is whether the trial court abused its discretion by rejecting Lee's proposed instruction regarding the presumption of innocence and witness credibility.

5

Generally, "[t]he purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Overstreet v. State, 783 N.E.2d 1140, 1163 (Ind. 2003), cert. denied, 540 U.S. 1150, 124 S. Ct. 1145 (2004). Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion. Id. at 1163-1164. When reviewing the refusal to give a proposed instruction, this court considers: (1) whether the proposed instruction correctly states the law; (2) whether the evidence supports giving the instruction; and (3) whether other instructions already given cover the substance of the proposed instruction. Driver v. State, 760 N.E.2d 611, 612 (Ind. 2002). To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. Benefiel v. State, 716 N.E.2d 906, 914 (Ind. 1999), reh'g denied, cert. denied, 531 U.S. 830, 121 S. Ct. 83 (2000).

Before a defendant is entitled to a reversal, he or she must affirmatively show that the erroneous instruction prejudiced his substantial rights. Gantt v. State, 825 N.E.2d 874, 877 (Ind. Ct. App. 2005). An error is to be disregarded as harmless unless it affects the substantial rights of a party. Oatts v. State, 899 N.E.2d 714, 727 (Ind. Ct. App. 2009); Ind. Trial Rule 61. "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." Dill v. State, 741 N.E.2d 1230, 1233 (Ind. 2001).

At the close of trial, Lee tendered the following final jury instruction:

> Under the law of this state, a person charged with a crime is presumed to be innocent. This presumption continues in favor of the

6

accused throughout the trial of this cause. To overcome the presumption of innocence, the [S]tate must prove the Defendant guilty of each essential element of the crime charged, beyond a reasonable doubt.

The Defendant is not required to present any evidence to prove his/her innocence or to prove or explain anything.

You should attempt to fit the evidence to the presumption that the Defendant is innocent.

If the evidence in this case is susceptible of two (2) constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the Defendant, and the other to his/her innocence, it is your duty, under the law to adopt that interpretation which is consistent with the Defendant's innocence, and reject that which points to his/her guilt.

Appellant's Appendix at 113; see Transcript at 451. The tendered instruction cited to the

Indiana Supreme Court's decision in Robey v. State, 454 N.E.2d 1221 (Ind. 1983).

Appellant's Appendix at 113.

The trial court refused to read Lee's tendered instruction to the jury, explaining:

I don't think this rises to an instruction. I rely on those element instructions, which I think fulfill the need of what you're [sic] intention is in these instructions, that the burden's on the State to prove it. If they fail to prove it, your client is not guilty and I will abide by the patterns and not give that instruction.

Transcript at 451.

Lee argues that Robey "requires that if a defendant requests an instruction advising the jury that the presumption of innocence prevails until the end of trial and that it is their duty to reconcile upon a theory of the defendant's innocence, the instruction must be given," that he "tendered this exact instruction," and that "despite the fact this was not covered by any other instruction, the trial court refused to give it." Appellant's Brief at 5-6. Lee argues that "[g]eneral instructions regarding the presumption of

7

innocence and proof beyond a reasonable doubt do not suffice." Id. at 8. Lee also argues that the court's error was not harmless because "the evidence to support the convictions was equivocal and the jury struggled to reach a verdict," noting that K.F.'s "testimony was inconsistent, contradictory and, to a large degree, improbable," and highlighting that Lee was found not guilty on three of the five charges. Id. at 10.

The State argues that "the presumption of innocence is a concept that may be conveyed to the jury not only in a single presumption of innocence instruction, but in other instructions so long as the concept is adequately covered." Appellee's Brief at 7-8. The State argues that "[t]his Court has held . . . that the holding in *Robey* was simply that the jury should be instructed that it should fit the evidence to the presumption of innocence" and that "[i]n the present case, other instructions given by the trial court satisfactorily informed the jury of the concept of the presumption of innocence." Id. at 8.

In his reply brief, Lee argues that "[t]he State contends that the Robey mandate was covered by other instructions, but this is not correct," noting that "[n]one of the other instructions given by the trial court and none of the instructions cited by the State in any way referred to the duty of the jury to fit the evidence to the theory that [Lee] was innocent." Appellant's Reply Brief at 3. Lee argues that, Robey, as well as cases applying its analysis in affirming the defendant's convictions, "cite another instruction that specifically refers to the duty to fit the evidence to the theory that the defendant is innocent," and that "[t]he general instructions on reasonable doubt cited by the State . . . have been held to be not sufficient." Id. Lee also notes that the State does not address in its brief whether the failure to issue his tendered instruction was harmless error.

8

At trial, the court issued the following relevant instructions to the jury as cited by the State:

> . . . . You should keep an open mind. You should not form or express any conclusion or judgment about the outcome of the case until the Court submits the case to you for your deliberations.
>
> * * * * *
>
> Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the defendant guilty of each element of the crime charged, beyond a reasonable doubt.
>
> The defendant is not required to present any evidence to prove his innocence or to prove or explain anything.

Appellant's Appendix at 62, 70. Additionally, the court instructed the jury in discussing reasonable doubt that "[i]f you find that there is a reasonable doubt that [Lee] is guilty of the crime(s), you must give [him] the benefit of that doubt and find [Lee] not guilty of the crime under consideration." Id. at 85. The court reiterated this notion when it instructed the jury on the elements of the individual crimes, noting at the conclusion of each instruction that "[i]f the State fails to prove each of these elements beyond a reasonable doubt, you must find [Lee] not guilty of" the offense. Id. at 71-75. Also, as noted by the State in its brief, the Court addressed how the jury should handle conflicting evidence, instructing the jury that "[i]f you find conflicting testimony, you may have to decide what testimony you believe and what testimony you do not believe." Id. at 86. Finally, the court instructed the jury that its instructions should not be considered in isolation but should be read together.

In Robey, the defendant tendered a jury instruction stating:

9

> The law presumes the defendant to be innocent of the crime charged, and this presumption continues in his favor throughout the trial of this cause. It is your duty, if it can be reasonably and conscientiously done to reconcile the evidence upon the theory that the defendant is innocent, and you cannot find the defendant guilty of the crime charged in the information unless the evidence satisfies you beyond a reasonable doubt of his guilt.

454 N.E.2d at 1222. The Court held that when such an instruction, "which advises the jury that the presumption of innocence prevails until the close of the trial, and that it is the duty of the jury to reconcile the evidence upon the theory of the defendant's innocence if they could do so, must be given if requested." Id. (citing Farley v. State, 129 Ind. 419, 26 N.E. 898 (1891); Simmons v. State, 179 Ind. App. 342, 385 N.E.2d 225 (1979)).

In Farley, upon which Robey principally relies, the Indiana Supreme Court noted that although the trial court "gave general instructions to the effect that the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt," the instructions did not address "the principle" put forward by the defendant's tendered instruction, namely, "that the presumption of innocence prevails throughout the trial, and that it was the duty of the jury to reconcile the evidence upon the theory of the defendant's innocence, if they could do so." 129 Ind. at 420-421, 26 N.E. at 899. Also, this court in Simmons addressed the importance of providing to the jury a thorough definition of the presumption of innocence apart from merely mentioning it in the context of reasonable doubt, noting that "[w]hile the legal scholar may understand that the presumption of innocence and the prosecution's burden of proof are logically similar, the ordinary citizen well may draw significant additional guidance from an instruction on the presumption of

10

innocence." 179 Ind. App. at 344, 385 N.E.2d at 226 (quoting Taylor v. Kentucky, 436 U.S. 478, 484, 98 S. Ct. 1930, 1934 (1978)).

Here, we find that the court's instructions did not adequately instruct the jury on the presumption of innocence. Indeed, the balance of the instructions cited by the State in support of its argument to the contrary are in the context of reasonable doubt. In particular, we do not find that an instruction was given to the jury adequately explaining the jury's duty to "reconcile the evidence upon the theory of the defendant's innocence if they could do so." To the extent that the jury was instructed that it had to find each element beyond a reasonable doubt and that it was up to each juror to decide whom to believe regarding conflicting testimony, we find that such instructions do not satisfy Robey's dictate that a jury be specifically instructed, if requested by a defendant, "that the jury should fit the evidence to the presumption that a defendant is innocent . . . ." Simpson v. State, 915 N.E.2d 511, 520 (Ind. Ct. App. 2009), trans. denied. Accordingly, we conclude that the court abused its discretion when it refused to give Lee's tendered instruction to the jury.

For the foregoing reasons, we reverse Lee's convictions and remand with instructions to grant Lee a new trial.

Reversed and remanded.

MAY, J., and CRONE, J., concur.

11