**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ELLIS DeBERRY,                     )
                                   )
    Appellant-Defendant,            )
                                   )
        vs.                       )    No. 49A04-1111-CR-606
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.             )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable John M.T. Chavis, II, Judge *Pro Tempore*
Cause No. 49F19-1103-CM-19703

**September 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Ellis DeBerry appeals following his conviction for Resisting Law Enforcement, a Class A misdemeanor.[1] DeBerry argues that the trial court abused its discretion when it instructed the jury on the amount of force necessary to "forcibly resist." Concluding that DeBerry failed to sufficiently object to the jury instruction at trial, we affirm.

## FACTS AND PROCEDURAL HISTORY

DeBerry is engaged to marry Eve Crawford. On March 22, 2011, Officer Gregory Kessie, a patrolman with the Indianapolis Metropolitan Police Department ("IMPD"), visited Crawford at her home and informed her that Corey, Crawford's then-seventeen-year-old-son, was in police custody. Corey is not DeBerry's biological son, but the two maintain a father-son relationship. Because of Corey's juvenile age, IMPD needed a parent or guardian to be present in order to question Corey about an incident unrelated to this matter. Officer Kessie had been dispatched to Crawford's home and assigned to bring a parent or guardian to the police station for that purpose.

At Officer Kessie's request, Crawford agreed to drive to the police station while Officer Kessie followed in his police vehicle. While in route, Crawford telephoned DeBerry, told him that "[the police] had Corey," Tr. p. 126, and instructed DeBerry to meet her at the police station. Crawford next made an impromptu stop at a convenience store to purchase medicine to treat a headache that was ailing her. Officer Kessie joined Crawford in the store's parking lot and waited outside the store, standing by his police vehicle, while Crawford made her purchase.

---

[1] Ind. Code § 35-44-3-3(a)(1) (2010).

On his way to meet Crawford at the police station, DeBerry drove past the convenience store. He recognized Crawford's vehicle in the store parking lot and stopped so that he and Crawford could drive to the police station together. DeBerry first walked to the store's entrance but then turned and approached Officer Kessie, asking, "Why you got my son?" Tr. pp. 161, 242. DeBerry appeared upset and aggressive, and he had his hand in his front pants pocket. Officer Kessie feared that DeBerry might be concealing a weapon. And in light of Crawford's unplanned stop at the convenience store and DeBerry's surprise appearance there, Officer Kessie questioned whether he had been "set up" by Crawford. Tr. p. 162. Officer Kessie instructed DeBerry to remove his hand from his pocket, but DeBerry did not comply. Instead, DeBerry continued to ask Officer Kessie why the police had Corey in custody. Officer Kessie again asked DeBerry to remove his hand from his pocket; DeBerry refused, and Officer Kessie drew his firearm. Officer Kessie asked a third time, and when DeBerry again did not comply, Officer Kessie pointed his firearm at DeBerry. DeBerry continued to refuse Officer Kessie's requests until Officer Kessie, with firearm still aimed, approached DeBerry. At that time, DeBerry removed his hand from his pocket, revealing a cell phone, and stated, "It's nothing"; "It's just a phone."

Realizing that DeBerry did not have a weapon, Officer Kessie holstered his firearm and ordered DeBerry to put his hands behind his back to be handcuffed for interfering with a police investigation. Officer Kessie grabbed DeBerry by the wrist, and DeBerry yelled, "No." At the same time, DeBerry "quickly and violently" jerked his arm from Officer Kessie's grasp and began to walk toward his car. Tr. p. 171. Officer Kessie

3

pursued DeBerry, who then turned and said, "I'm not going in cuffs." Tr. p. 174. Officer Kessie then pushed DeBerry against his car and handcuffed him.

DeBerry was charged with Class A misdemeanor resisting law enforcement. At a pretrial hearing several weeks before his jury trial, DeBerry expressed concern with the court's proffered Preliminary Instruction No. 6 defining "forcibly resists." The jury instruction read: "forcibly resisting means when strong or powerful means are used to evade a law enforcement official's rightful exercise of his or her duties." Tr. p. 63. DeBerry advised the court that this instruction omitted the word, "violent," as found in the Indiana Supreme Court's decision in *Spangler v. State*, 607 N.E.2d 720 (Ind. 1993) ("We believe that one 'forcibly resists' law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties."). DeBerry requested that the court use the exact language of the *Spangler* definition, and the court took the motion under advisement.

The morning of the jury trial, the court concluded that it would include the word, "violent," as used in *Spangler*, but that it would add the following language to Preliminary Instruction No. 6: "However, this force need not rise to the level of mayhem and a modest level of resistance may suffice." Tr. p. 130. The court based this revision on its reading of *Johnson v. State*, 833 N.E.2d 516 (Ind. Ct. App. 2005), *Graham v. State*, 903 N.E.2d 963 (Ind. 2009), and *Stansberry v. State*, 954 N.E.2d 507 (Ind. Ct. App. 2011). The latter case succinctly combines the principles established by the other two:

> [T]he force necessary to sustain a conviction [for resisting law enforcement] need not rise to the level of mayhem, and our supreme court has acknowledged that a "modest level of resistance" may suffice. *Graham v. State,* 903 N.E.2d 963, 965 (Ind.2009) (citing *Johnson v. State,* 833

4

N.E.2d 516, 517 (Ind. Ct. App. 2005)).

*Stansberry v. State*, 954 N.E.2d 507, 510-11 (Ind. Ct. App. 2011). In *Johnson*, this court held that turning away and pushing away with one's shoulders during an attempted police search constitutes forcible resistance. 833 N.E.2d at 518. We also held "stiffening up" in refusal to get into a police vehicle to be a forcible act. *Id.* at 518-19. Similarly, in *Graham*, the Indiana Supreme Court stated that stiffening one's arms when an officer tries to position them for cuffing would suffice for force. 903 N.E.2d at 966 (holding that simply refusing to present one's arms for cuffing does not constitute forcible resistance).

DeBerry responded to the trial court's revision, stating, "The Defense would like to object to the proposed instruction." Tr. p. 134. The court acknowledged the objection, and DeBerry added, "And I believe Your Honor, that we would need to object again when you present them to the jury and we would do so simply by saying that we renew our pretrial objection to the jury instructions." Tr. p. 135. The court indicated that this was indeed the correct procedure. Ultimately, the court tendered the following Preliminary Instruction No. 6 when it read its instructions to the jury:

> For one to resist law enforcement one must forcibly resist at [sic] arrest by the officer.
>
> One forcibly resists law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of duties. However, the force need not rise to the level of mayhem and a modest level of resistance may suffice.

Appellant's App. p. 57. The court's final instructions to the jury included its preliminary instructions, but they were not re-read to the jury. DeBerry was given the opportunity to

5

review the court's final instructions prior to closing arguments, at which time he made no statements regarding Preliminary Instruction No. 6 or his pretrial objection.

## DISCUSSION AND DECISION

"The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind. 2003). "Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion." *Lee v. State*, 964 N.E.2d 859, 862 (Ind. Ct. App. 2012), *trans. denied*. "To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury." *Id.*

"The Indiana Supreme Court has held that in order to preserve a claim that the trial court abused its discretion in instructing the jury for appellate review, a defendant must specify at trial the specific grounds upon which he believes the instruction is improper." *Orta v. State*, 940 N.E.2d 370, 376 (Ind. Ct. App. 2011), *trans. denied* (citing *Scisney v. State*, 701 N.E.2d 847, 849 (Ind. 1998)). Failure to identify adequately the grounds of an objection results in a waiver of that claim of error for appeal. *Scisney*, 701 N.E.2d at 849.

DeBerry argues that the trial court's Preliminary Instruction No. 6 incorporated an appellate standard of review that is inapplicable to the jury's role as fact-finder. He also argues that the instruction as a whole was confusing and misleading to the jury. Upon review, the record reveals that DeBerry failed to assert these grounds for his objection at trial, generally or specifically. DeBerry's only statements with regard to his objection

6

were, "The Defense would like to object to the proposed instruction," Tr. p. 134, and, "[W]e would need to object again when you present [the instructions] to the jury…." Tr. p. 135. Although there was considerable pretrial discussion regarding Preliminary Instruction No. 6, that discussion concerned the trial court's omission of the word, "violent," not the court's ultimate addition of the language DeBerry challenges on appeal. *See Survance v. State*, 465 N.E.2d 1076, 1083 (Ind. 1984) (holding prior dialogue between court and counsel sufficient for purposes of Trial Rule 51(C)). We therefore conclude that DeBerry has waived these issues for appellate review.

Waiver notwithstanding, if the trial court erred in instructing the jury on the amount of force necessary to "forcibly resist," the facts of this case are sufficient to render the error harmless. "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Dill v. State*, 741 N.E.2d 1230, 1233 (Ind. 2001). Here, the record reveals that DeBerry jerked his arm away from Officer Kessie's grasp while being handcuffed. We conclude that a reasonable trier of fact would determine this to be a forcible act had it been instructed with the exact definition from *Spangler* and nothing more.

The judgment of the trial court is affirmed.

BAKER, J., concurs.

ROBB, C.J., concurs in result.