Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 05 2013, 9:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALFREDO LOPEZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1207-CR-346 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Clayton Graham, Judge
The Honorable Valerie Horvath, Commissioner
Cause No. 49G17-1203-FD-14945

**February 5, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Alfredo Lopez appeals his conviction of Domestic Battery,[1] a class D felony. Lopez presents the following restated issue for review: Did the trial court err in refusing Lopez's tendered instruction on the presumption of innocence?

We affirm.

The facts favorable to the conviction are that Lopez had lived with his girlfriend, Tonya Fleenor, and her daughter, C.B., for more than eight months at the time of the events leading to his conviction. On the morning of March 4, 2012, Lopez awakened Fleenor and told her that he needed to use the bathroom but could not do so because C.B. had been in there for a long time. Fleenor told C.B. that she needed to leave the bathroom and C.B. complied. A short time later, C.B. went downstairs to the kitchen and asked Lopez if she could eat leftovers from the previous evening's dinner. Lopez told her that she could not and that she should eat breakfast food instead. C.B. left the house to go to church.

After C.B. left, Fleenor picked up a video-game unit from the floor of the living room and walked into the kitchen to prepare coffee. Lopez walked behind her and wrapped his arms around her in a "bear hug" attempting to get the video game from her. *Transcript* at 32. In so doing, he squeezed Fleenor's hands and wrists "very hard", to the point that Fleenor thought Lopez had broken one of her thumbs. *Id.* at 33. As Fleenor attempted to get away, Lopez punched her multiple times in her cheek and jawbone and then "slammed" her on her tailbone to the floor. *Id.* Fleenor got up, went upstairs, and called the woman who drove C.B. to church and asked her not to bring C.B home until Fleenor confirmed that it was okay

---

[1]    Ind. Code Ann. § 35-42-2-1.3 (West, Westlaw current through 2012 2nd Reg. Sess.).

to do so.  Lopez came upstairs, called his sister, and told her he and Fleenor had been fighting and that he was coming to her (his sister's) house.  When Fleenor attempted to get up off of the bed, Lopez flung the phone at her and told her she was not going anywhere.  After ten or fifteen minutes, Lopez told Fleenor to drive him to his sister's house, which she did.  When Fleenor arrived back home, she called police and reported that Lopez had assaulted her.  When C.B. arrived home after church, she observed that her mother was crying and had bruises on her hands and arms.

On March 5, Lopez telephoned Fleenor approximately thirty to forty-five times and the two exchanged frequent text messages.  Lopez continually asked Fleenor to take him back, but she was not receptive to the request.  That evening, Fleenor contacted police again and reported that Lopez had been calling her and threatening her.  Indianapolis Metropolitan Police officer Kenneth Greer responded to the call.

When Officer Greer knocked on the door, Fleenor answered while holding a can of mace.  While Officer Greer was interviewing Fleenor and C.B., Lopez phoned four times.  Fleenor answered the first time.  She indicated to Officer Greer that it was Lopez and he told her to put it on speaker phone if she was willing to talk with Lopez.  She did so.  During that conversation, Lopez and Fleenor primarily discussed returning Lopez's belongings to him.  When he called a second time, this one also put on speaker phone so that Officer Greer could hear what was being said, Lopez threatened to burn down Fleenor's house, vandalize her vehicle, and come inside the house, "stomp on her chest and kill her." *Id.* at 120.  The third time he called, Fleenor indicated she did not feel well and left the room.  C.B. answered the

third call and put it on speaker phone. Although Lopez did not make threats during that call, his tone "wasn't good." *Id*. at 121. When Lopez called a fourth time, Officer Greer instructed C.B. to not answer the phone. Greer then drove to Lopez's sister's apartment and placed Lopez under arrest.

The State charged Lopez with three counts of domestic battery, two as class D felonies and one as a class A misdemeanor; one of the former was elevated to a class D felony on the basis that Lopez had a prior conviction of domestic battery. The State also charged Lopez with one count of battery on a family or household member as a class D felony, criminal confinement as a class D felony, intimidation as a class D felony, and battery as a class A misdemeanor. The State later added a habitual offender allegation. Prior to trial, the State dismissed one count of domestic battery as a class D felony and one count of battery as a class D felony, both for evidentiary reasons.

Following trial, a jury found Lopez not guilty of criminal confinement and intimidation and guilty of battery and one count of domestic battery, both as class A misdemeanors. In the second phase of the trial, the jury found Lopez guilty of domestic battery, elevated to a class D felony as a result of a previous domestic battery conviction. It is unclear from the record how the habitual offender allegation was resolved. The State speculates that "it appears that the State dismissed this charge sometime before the beginning of phase two of Defendant's jury trial." *Appellee's Brief* at 2 n.1. Regardless, Lopez was not found to be a habitual offender. The trial court entered judgment of conviction only on the elevated charge of class D felony domestic battery and sentenced Lopez to three years on that

conviction.

At trial, Lopez tendered the following "presumption of innocence" instruction:

If the evidence in this case is susceptible of two constructions or interpretation, each of which appears to you to be reasonable, and one of which points to the guilt of the accused, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which is consistent with the accused's innocence, and reject that which points to his guilt.

*Appellant's Appendix* at 136. The court refused the instruction, citing the following reasons:

Defendant's tendered final instruction will be omitted. I believe the pre … the preliminary instructions that were covered by the State address both of those issues. And while they don't state exactly the same thing, exactly the same way, the message covered in that proposed final instruction is addressed in pervious [sic] preliminary instructions as well as the reasonable doubt instruction.

*Id*. at 149. Lopez contends the trial court erred in omitting his tendered instruction.

Our standard of review in matters such as this is well settled.

To resolve an appellate claim of trial court error in refusing an instruction, we consider: (1) whether the tendered instruction is a correct statement of the law; (2) whether there is evidence in the record to support the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. When evaluating these factors, we are mindful that instructing the jury generally lies within the sole discretion of the trial court and that reversal is appropriate only for abuse of discretion.

*Raess v. Doescher*, 883 N.E.2d 790, 798-99 (Ind. 2008) (internal citations omitted). Lopez

contends that "for almost a century, the Indiana Supreme Court has held that failure to give

this particular instruction is reversible error[.]" *Appellant's Brief* at 4-5. In support of his

argument that the failure to give this instruction after it has been requested constitutes

reversible error, Lopes cites *Lee v. State*, 964 N.E.2d 859 (Ind. Ct. App. 2012), *trans.*

*denied*. We need not decide whether this contention is true because Lopez's claim is subject

to the harmless error analysis.

Even where a trial court errs in giving or refusing to give a tendered instruction, the defendant is entitled to reversal only if he or she affirmatively shows that the error prejudiced his or her substantial rights. *Mateo v. State*, 2012 WL 6711478 (Ind. Ct. App. Sept. 17, 2012), *trans. denied.* "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Lee v. State*, 964 N.E.2d at 862-63 (quoting *Dill v. State,* 741 N.E.2d 1230, 1233 (Ind. 2001)).

Fleenor testified at trial as to the events of March 4 and 5, consistent with the narrative set out above. To the extent that C.B. observed the events of that day, her trial testimony corroborated Fleenor's account of Lopez's actions. In particular, C.B. testified that Lopez was upset that she was taking too long in the bathroom before she left for church. She also testified that when she arrived home after church, her mother was crying and her arms and hands were bruised. When Officer Gregory Ressino responded to Fleenor's call shortly after the incident, she told him that Lopez had punched her in the face and that her hand hurt. When Officer Greer responded to Fleenor's call the next day in which she complained of harassment, he observed that Fleenor's hand, thumb, and wrist were bruised. The State introduced photographs of those bruises at trial.

The State also introduced text messages exchanged by Fleenor and Lopez following the incident. Several hours after taking Lopez to his sister's house, Fleenor texted, "U really hurt me," to which Lopez responded, "I know." *The Exhibits* at 28. When Fleenor

6

responded to Lopez's request to essentially give him another chance, she replied, "Deep down in my heart i love u but u hurt me so bad im so sore and bruised wow i don't think this can be fixed." *Id*. at 30 (this text, as with all ensuing texts reproduced in this opinion, is transcribed verbatim). Lopez reiterated his request for another chance and Fleenor replied, "Why next time you really hurt me im so tired of the childish crap". *Id*. Lopez responded, "U know im retard sometimes i do hate myself." *Id*. Fleenor repeated her belief that Lopez would continue to act the same way if she gave him another chance and he responded, "Im done with my bullshit and acting retarded all the way." *Id*. at 31. Fleenor replied, "You said that last time," to which he replied, "I know but its never be this bad." *Id.* Later, Lopez texted, "I miss my family i really do i miss the hell out of yall I sooo sorry[.]" *Id*. at 32. Fleenor replied, "It sucks you realise what u got then its gone[.]" *Id*. Lopez replied, "U aint lying there. I know i fucked up i hate myself i wish i could take the pain away." *Id*.

After Officer Greer responded to Fleenor's call on March 5, he overheard a phone call made by Lopez in which Lopez threatened to vandalize Fleenor's vehicle, come inside her house, and "stomp on her chest and kill her." *Transcript* at 120. In addition, the State called as a witness Erica Shadek, the mother of two of Lopez's children. She testified that Lopez sent her a text at 6:32 p.m. on March 5 informing her that he was going back to jail. Finally, Lopez called Fleenor from the Marion County Jail on March 6 and began the conversation by saying, "I guess I fucked up, huh? Big time." *State's Exhibit* 8. He then proceeded to ask Fleenor to drop the matter, in exchange for which he promised to leave her alone. During this short conversation, Fleenor informed Lopez that she was in the hospital and indicated

7

that she might have a collapsed lung. Lopez responded with distress and remorse.

Taken together, the foregoing considerable evidence of guilt is such that even had the rejected instruction been read, the outcome of trial would not have changed. *Dill v. State,* 741 N.E.2d 1230. Thus, even assuming for the sake of argument that the trial court erred in refusing Lopez's tendered instruction on the presumption of innocence, the error was harmless. *See Lee v. State*, 964 N.E.2d 859.

Judgment affirmed.

NAJAM, J., and BRADFORD, J., concur.