# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**VICTORIA L. BAILEY**
Beech Grove, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana



FILED

Feb 06 2013, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WALTER E. SMITH, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A04-1112-CR-637 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Michael Rader, Judge
Cause No. 84D05-1106-FA-1942

February 6, 2013

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

Walter E. Smith, Jr. ("Smith") appeals his conviction for dealing in cocaine[1] as a Class A felony. On appeal, Smith raises the following restated issues:

I.  Whether the trial court committed reversible error when it refused to give Smith's tendered jury instruction.

II. Whether the trial court's scheduling of Smith's trial entitled Smith to discharge under Indiana Rule of Criminal Procedure 4(B).

III. Whether the trial court abused its discretion when it admitted evidence obtained during a traffic stop.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

In the early morning hours of June 17, 2011, Officer Brent Long ("Officer Long"),[2] a Patrol Division Officer and a K-9 Handler with the Terre Haute Police Department who was working criminal interdiction on I-70, initiated a traffic stop of a U-Haul truck that he observed repeatedly crossing the center lane and the right fog line. The driver of the U-Haul was identified as Smith. During the stop, Officer Long asked for assistance from Officer Matthew Carden ("Officer Carden") and Officer Phillip Ralston ("Officer Ralston"), fellow officers who were also working criminal interdiction that evening. When Officers Carden and Ralston arrived a few minutes later, Smith was behind the U-Haul with Officer Long, who was writing him a warning. At Officer Long's request, Officer Ralston took over the duty of writing Smith's warning for "unsafe lane movement," and Officer Carden began questioning Smith about where he

---

[1] *See* Ind. Code § 35-48-4-1.

[2] Officer Long was shot and killed in the line of duty on July 11, 2011. *Suppression Hr'g* at 6; http://www.terrehaute.in.gov/departments/pd (last visited Jan. 22, 2013).

was coming from and where he was going. *Jury Tr*. at 167-169, 259.[3] Officers Carden and Ralston testified that Smith was extremely nervous and "sweating profusely." *Id*. at 168, 261, 281. Both officers also testified that although they were in uniform and wearing bullet proof vests, neither of them was sweating that evening. *Id*. at 168, 262.

While Officers Ralston and Carden were performing their tasks, Officer Long got his "K-9 partner Shadow" out of the patrol car and walked Shadow around the exterior of Smith's U-Haul. *Id*. at 169, 262. Officer Carden testified that Officer Long walked Shadow along the driver's side of the U-Haul toward the back, and as he continued past the back on the passenger-side, "Shadow jerked his head back at that right rear corner and then started going up and down with [his] head back at that right rear corner and then started going up and down with [his] head right there at that corner." *Id*. at 169-70. The U-Haul cargo area was secured by a locked padlock, and Smith stated that he did not have the key.

Officer Long returned Shadow to the patrol car, and because it was nighttime on the side of an interstate highway, the U-Haul was moved to a nearby Wal-Mart parking lot for safety reasons. Officer Ralston and another officer who arrived on the scene stayed with Smith. Meanwhile, Officers Carden and Long went to the drug task force office to obtain a search warrant for the U-Haul. *Appellant's App*. at 35. Officer Long applied for the search warrant through a telephonic hearing, which was conducted by Judge David Bolk. During that hearing, Officer Long testified to the facts supporting

---

[3] The record before us contains the transcripts from various hearings. We cite to the following: the transcript of the jury trial as *Jury Tr.*; the transcript of the September 16, 2011 suppression hearing as *Suppression Hr'g*; the transcript of the hearing held September 26, 2011 as *Sept. 26 Hr'g*; and the transcript of the September 29, 2011 hearing as *Sept. 29 Hr'g.*

probable cause to search the U-Haul, and Judge Bolk granted the issuance of the warrant. Thereafter, Officers Long and Carden returned to the Wal-Mart parking lot.

Pursuant to the search warrant, the officers cut the padlock to obtain access to the U-Haul's cargo area and, once inside, found that it was only one-quarter full; it contained an arm chair in poor condition, a used "torpedo heater," a table top with no legs, several boxes, and a plastic container. *Jury Tr.* at 182-83. Officer Ralston testified that the chair and heater "were junk." *Id.* at 270. Officer Carden testified that, based on his training and experience, he believed he was looking at "a cover load," i.e., items that conceal the true cargo and provide a story to legitimize the trip. *Id.* at 183. Behind the table top, the officers found a cardboard box with two brick-like packages wrapped in duct tape and vacuum sealed, which Officer Carden testified was consistent with how narcotics are packaged for transportation. *Id.* at 184, 186. The officers used a pocket knife to cut into the package and found a white, powdery substance, which was field-tested and showed the presence of cocaine. *Id.* at 189-90, 193. At trial, an Indiana State Police Crime Laboratory forensic scientist ("Forensic Scientist") confirmed that the white substance was cocaine, and that one brick weighed 1001.0 grams and the other weighed 996.9 grams. *Jury Tr.* at 246-47; *State's Ex.* 19. Smith was arrested and charged with dealing in cocaine as a Class A felony, possession of cocaine as a Class C felony, and maintaining a common nuisance as a Class D felony. *Appellant's App.* at 17.

Smith filed a motion for a speedy trial pursuant to Indiana Criminal Rule 4(B)(1), and the trial court set the trial for September 27, 2011. *Appellant's App.* at 27-28. Twenty days prior to that trial date, Smith filed a motion to suppress the evidence

4

obtained as a result of the search warrant. *Id*. at 33-51. In his motion, Smith did not question the legality of the initial stop of Smith's U-Haul; instead, he maintained that "[b]y extending the detention to conduct a drug dog sniff of the vehicle, [Officer Long] exceeded the scope of the original traffic stop without probable cause, or objectively reasonable articulated suspicion, thus violating the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution." *Id.* at 34. "A copy of the transcript [of the telephonic hearing] and [Officer Long's] report [of the stop were] attached [to the motion] and incorporated [t]herein by way of reference as Exhibits A and B respectively." *Id*. at 33.

The suppression hearing was held on September 16, 2011, a date after which Officer Long had already been killed in the line of duty. Without Officer Long's testimony, the State introduced evidence about the stop and its timing through the testimony of Officers Ralston and Carden. Smith introduced evidence of the timing of the stop and the K-9 search through the transcript of Officer Long's sworn telephonic application for the warrant. Officer Ralston testified that Officer Long had started writing Smith's warning for unsafe lane movement, but that Officer Ralston had finished writing it. *Suppression Hr'g* at 15, 36, 38. The officers also testified regarding the timing of their arrival at the scene and the manner in which Officer Long took Shadow around the U-Haul. *Id*. at 12-13. After finding that Smith was not unduly detained, the trial court denied his motion to suppress.

Four days before the scheduled trial, Smith moved to exclude evidence and strike witnesses due to the State's belated discovery compliance. *Appellant's App*. at 81-83. A

hearing was held on September 26, 2011, at which Smith argued that he would like additional time to take a deposition from both the Forensic Scientist and Detective Denzil Lewis of the Vigo County Drug Task Force. *Sept. 26 Hr'g* at 58. The trial court allowed Smith time to depose the witnesses and moved the trial date, explaining that it was a fair result for both the defendant and the State and "would get the issue of the speedy trial addressed." *Sept. 26 Hr'g* at 63.

The trial court held another hearing on September 29, 2011, during which Smith stated that he had conducted the depositions but did not yet have the transcripts. *Sept. 29 Hr'g* at 1. Smith also stated his intent to get an independent chemical analysis of the substance found in the U-Haul; a test Smith estimated would take two weeks. *Id.* at 3. Later in the hearing, Smith stated he was not ready for trial, but moved for discharge pursuant to Criminal Rule 4. *Sept. 29 Hr'g* at 11-12. The trial court denied Smith's motion for discharge.

Voir dire began on October 3, 2011, and Smith's trial continued through October 5, 2011. During trial, Smith objected to Officer Carden's description of the initial traffic stop, contending "I don't think this officer has established the foundation in the law to justify the stop." *Jury Tr.* at 163. The State responded, "Your honor, I think that at this point that the court, as [defense counsel] has said, already heard testimony on this, the State would rest on that hearing, that the court has already had and what was said on that." *Id.* at 164. The trial court overruled Smith's objection. Smith later entered a continuing objection to the State introducing evidence of the contents of the U-Haul, maintaining "that's the fruits of improper stop and search." *Id.* at 181. The trial court

6

said to Smith, "[F]or economy, if you refer back to previous proceedings, I'm going to show all of those arguments incorporated by reference." *Id.* When Smith objected to the State introducing evidence of the cocaine, the trial court again "incorporated previous arguments made in proceedings before th[e] court," and overruled Smith's objection. *Id.* at 185.

At the close of trial, Smith tendered a jury instruction on the presumption of innocence. The State argued that Smith's tendered instruction was "adequately covered in other instructions." *Jury Tr.* at 365. The trial court agreed with the State and declined to give the instruction. Instead, the trial court gave an instruction, which in relevant part stated, "You should attempt to fit the evidence to the presumption that the Defendant is innocent . . . ." *Appellant's App.* at 138, 166.

Smith was found guilty of dealing in cocaine as a Class A felony, possession of cocaine as a Class C felony, and maintaining a common nuisance as a Class D felony. *Jury Tr.* at 472. On November 2, 2011, the trial court vacated the latter two counts on double jeopardy grounds and sentenced Smith for his Class A felony conviction to forty-five years executed in the Department of Correction. Additional facts will be added where necessary.

## DISCUSSION AND DECISION

### I.    Jury Instructions

At the close of his trial, Smith tendered the following instruction pertaining to the presumption of innocence:

> If evidence in this case is susceptible of two constructions or interpretations, each of which appears to be reasonable, and one of which

7

points to the guilt of the Defendant and the other to his/her innocence, it is your duty, under the law, to adopt that interpretation which is consistent with the Defendant's innocence and reject that which points to his/her guilt.

*Appellant's App.* at 148. Smith's tendered instruction cited to the Indiana Supreme Court's decision in *Robey v. State*, 454 N.E.2d 1221 (Ind. 1983). *Id.*

The trial court refused Smith's instruction on the basis that its substance was covered by the court's own instructions—Preliminary Instruction No. 11 and Final Instruction No. 15—which read as follows:

> You are the exclusive judges of the evidence, the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe, the manner and conduct of the witness while testifying, any interest or bias or prejudice the witness may have, any relationship with other witnesses or interested parties, and the reasonableness of the testimony of the witness considered in the light of all of the evidence in this case.
>
> *You should attempt to fit the evidence to the presumption that the Defendant is innocent* and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony, you must determine which of the witnesses you will believe and which of them you will disbelieve.
>
> In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day-to-day living. The number of witnesses who testify to a particular fact or the quantity of evidence on a particular point need not control your determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

*Appellant's App.* at 138, 166 (emphasis added). Smith asserts that the trial court abused its discretion in instructing the jury on the presumption of innocence by refusing to give his tendered instruction and, instead, using the above instruction.

Generally, the purpose of an instruction is to "inform the jury regarding the law

8

applicable to the facts without being misleading and should enable the jury to understand the case and arrive at a just, fair, and correct verdict." *Filice v. State*, 886 N.E.2d 24, 37 (Ind. Ct. App. 2008), *trans. denied*.

> Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion. When reviewing the refusal to give a proposed instruction, this court considers: (1) whether the proposed instruction correctly states the law; (2) whether the evidence supports giving the instruction; and (3) whether other instructions already given cover the substance of the proposed instruction. To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury.

*Lee v. State*, 964 N.E.2d 859, 862 (Ind. Ct. App. 2012) (citations omitted), *trans. denied*.

Smith maintains that his tendered instruction, which was quoted directly from *Robey,* was a correct statement of the law, was supported by evidence presented at trial, and was not covered by any of the instructions given by the trial court." *Appellant's App.* at 3. Smith cites to our recent decision in *Lee* as support for his position. In *Lee*, the defendant tendered an instruction regarding the presumption of innocence, which was identical to the instruction tendered by Smith. The trial court refused to give the instruction because it believed that other instructions adequately covered the tendered instruction. *Lee*, 964 N.E.2d at 862. At the close of Lee's trial, the trial court gave the following relevant instructions:

> .... You should keep an open mind. You should not form or express any conclusion or judgment about the outcome of the case until the Court submits the case to you for your deliberations.
>
> . . . .
>
> Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must

9

prove the defendant guilty of each element of the crime charged, beyond a reasonable doubt.

*Id*. at 864. The jury found Lee guilty as charged.

On appeal, our court reversed Lee's conviction after finding that the trial court's "instructions did not adequately instruct the jury on the presumption of innocence. Indeed, the balance of the instructions cited by the State in support of its argument to the contrary is in the context of reasonable doubt." *Id*. at 865. Particularly, our court "[did] not find that an instruction was given to the jury adequately explaining the jury's duty to '*reconcile the evidence upon the theory of the defendant's innocence if they could do so*.'" *Id*. (citing *Robey*, 454 N.E.2d at 1222) (emphasis added).

While Lee's convictions were reversed on appeal, the facts before us are distinguishable from *Lee*. In fact, the instant case is on all fours with this court's decision in *Simpson v. State*, 915 N.E.2d 511 (Ind. Ct. App. 2009), *trans. denied* (2010). There, at the close of trial, Simpson, citing to *Robey* as authority, tendered the following final jury instruction:

> You should attempt to fit the evidence to the presumption that the Accused is innocent.
>
> If the evidence in this case is susceptible of two (2) constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the accused, and the other to his innocence, it is your duty, under the law, to adopt the interpretation which is consistent with the Accused's innocence, and reject that which points to his guilt.

*Simpson*, 915 N.E.2d at 518. The trial court refused to give the above instruction. Instead, the trial court gave an instruction identical to the one given by the trial court at the close of Smith's trial. Simpson was convicted as charged.

10

On appeal, Simpson, like Smith, maintained that the trial court's refusal to give his tendered instruction was an abuse of discretion because it did not properly inform the jury of their duty when the case is susceptible of two constructions or interpretations. *Id*. at 519. Our court disagreed with Simpson on the following grounds:

> Simpson's instruction is based on one of the instructions given by the trial court in *Robey,* which reads in pertinent part as follows:
>
>> If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt.
>>
>> You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt.
>
> [*Robey*,] 454 N.E.2d at 1222).
>
> The State contends that Simpson's tendered instruction was "incomplete because it failed to inform the jury that they could in fact conclude that one of the two opposing conclusions was unreasonable." The State further contends that "[o]ur Supreme Court's holding in *Robey* simply required an instruction that the jury should fit the evidence to the presumption that a defendant is innocent" and that the trial court's instruction "informed the jury as required by *Robey*." We agree with the State and therefore conclude that the trial court did not abuse its discretion in refusing Simpson's instruction. Consequently, we affirm Simpson's convictions.

*Simpson*, 915 N.E.2d at 519-20 (citations omitted).

Here, exactly like the instructions given at the close of Simpson's trial, Smith's jurors were instructed in relevant part, "You should attempt to fit the evidence to the

11

presumption that the Defendant is innocent . . . ." *Appellant's App*. at 138, 166. This instruction satisfied our Supreme Court's holding in *Robey* that the "jury should fit the evidence to the presumption that a defendant is innocent." *Id*. at 520. Pursuant to the precedents of *Robey* and *Simpson*, the trial court did not abuse its discretion in refusing to use Smith's tendered instruction because the substance of that instruction was covered by instructions given by the court.[4]

## II. Criminal Rule 4

Smith contends that the trial court's scheduling of his trial entitled him to discharge under Indiana Rule of Criminal Procedure 4(B). On review of a claimed violation of Criminal Rule 4, we employ two standards of review: we review the trial court's legal conclusions de novo but exercise deference with respect to its factual findings. *Otte v. State*, 967 N.E.2d 540, 545 (Ind. Ct. App. 2012), *trans. denied*. Here, both parties maintain that the appropriate standard of review is whether the trial court abused its discretion by refusing Smith's motion for discharge.

An abuse of discretion occurs only when the trial court's decision is clearly against the logic and effect of the facts before the court. *Weis v. State*, 825 N.E.2d 896, 900 (Ind. Ct. App. 2005). Smith's claim of error in this regard is based solely on Indiana Rule of Criminal Procedure 4(B), which provides, in relevant part, as follows:

> If any defendant held in jail on an indictment or an affidavit shall move for
> an early trial, he shall be discharged if not brought to trial within seventy

---

[4] Because we decide this issue on the fact that the tendered instruction was covered by other instructions given to the jury, we do not address, as this court did in Simpson, whether the instruction was "incomplete because it failed to inform the jury that they could in fact conclude that one of the two opposing conclusions was unreasonable." *Simpson v. State*, 915 N.E.2d 511, 520 (Ind. Ct. App. 2009), *trans. denied* (2010).

(70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

"[A] defendant must maintain a position reasonably consistent with his request for a speedy trial and must object, at his earliest opportunity, to a trial setting that is beyond the seventy-day time period." *McKay v. State*, 714 N.E.2d 1182, 1189 (Ind. Ct. App. 1999).

Following Smith's motion for a speedy trial, the trial court set a trial date for September 27, 2011, which was within the seventy-day time limit. *Appellant's App.* at 27, 28. The day before the trial date, however, a hearing was held on Smith's motion to exclude evidence and strike evidence based on an allegation that the State failed to timely disclose witnesses and evidence. *Id.* at 81-83. As Smith noted, the typical remedy for any discovery violation would be a continuance. *Sept. 26 Hr'g* at 5; *see Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000) (generally, proper remedy for discovery violation is continuance). Smith stated that he would like additional time to take Detective Lewis's deposition and to take the deposition of the Forensic Scientist. *Sept. 26 Hr'g* at 58. The trial court allowed Smith time to depose the witnesses, stating: "We are still within the seventy days, if my arithmetic is right. You've got your speedy trial, but you've also got your chance to depose these potential witnesses. And then take whatever course of action you feel is appropriate." *Id.* at 67.

During the September 29, 2011 hearing, which fell on the seventieth day, Smith stated that he had conducted the depositions but did not yet have the transcripts. *Sept. 29 Hr'g* at 1. Smith then stated, "[Y]our honor . . . if you ask me the question, are you know

13

prepared to go to trial.  [sic]  I would candidly say, your honor, not really."  *Id.* at 3.

Smith blamed his lack of preparedness on the State's delay in providing certification that

the substance seized was cocaine.  Smith argued that without that certification, he did not

know whether to do his own chemical test of the substance.  The trial court was not

persuaded, stating, "[T]he allegation was that it was cocaine all along.  You had the

substance, you had it available, with nothing more than a motion you could have had a

portion of this for your own analysis."  *Id.* at 7.  Later in the hearing, Smith again stated

he was not ready for trial, but moved for discharge pursuant to Criminal Rule 4.  *Id.* at

10-12.

> The trial court denied Smith's motion based on the following reasoning:
>
> Today is the seventieth day. . . .  I gave you an opportunity to start trial today, you wanted to do depositions.  I gave you the opportunity to do depositions, and you did them. . . .  But, you have also declined my offer to begin the trial today, because you did not feel that you would be ready.  I've not heard enough justification to warrant discharge. . . . *[L]et the record reflect that I did not agree with you on continuing beyond today.  I gave you the opportunity to start trial today, you did not want to do so.  Now I acceded to your request for more time and put the trial off.*  That's what the record shows.

*Id.* at 12-14 (emphasis added).

The trial court initially set Smith's trial date within seventy days.  Thereafter, the

trial court attempted to stay within that seventy-day time frame.  Ultimately, Smith stated

that he was not ready for trial, and the trial court acceded to this request to delay the trial.

Despite moving for discharge, Smith did not maintain a position reasonably consistent

with his request.  *See McKay*, 714 N.E.2d at 1188-89 ("defendant must maintain a

position reasonably consistent with his request for a speedy trial").  The trial court

14

concluded, and we concur, that any delay past the seventieth day was chargeable to Smith. The trial court did not abuse its discretion in refusing to discharge Smith pursuant to Criminal Rule 4(B).

### III. Admission of Evidence

Finally, Smith contends that the trial court abused its discretion in admitting, over his objection, the cocaine evidence gathered from the U-Haul truck he was driving. *Appellant's Br*. at 13. Specifically, Smith maintains that Officer Carden's testimony at trial did not "establish the foundation in law to justify the stop." *Appellant's Br*. at 13 (quoting *Jury Tr.* at 163). Citing to *Washington v. State*, 784 N.E.2d 584, 586 (Ind. Ct. App. 2003), Smith contends that while there was foundational evidence regarding the traffic violation at the suppression hearing, no such evidence was admitted at trial. As such, Smith argues that without a proper basis for the stop, the trial court abused its discretion in failing to exclude evidence obtained as a result of that stop. Smith, however, fails to remind this court that the cocaine was, in fact, seized pursuant to a valid search warrant—a fact that was explained to the jury prior to the State introducing the evidence of the cocaine. *Jury Tr.* at 173-74. As such, we find that Smith's issue is more properly framed as whether the trial court abused its discretion in admitting the cocaine evidence because the search warrant was not supported by probable cause.

A search warrant is presumed valid, and the burden is upon the challenger to rebut the presumption. *Britt v. State*, 810 N.E.2d 1077, 1080 (Ind. Ct. App. 2004); *Rios v. State*, 762 N.E.2d 153, 156-57 (Ind. Ct. App. 2002). The Fourth Amendment of the United States Constitution protects citizens against unreasonable searches and seizures of

15

persons and property by requiring a warrant based on probable cause.[5] *Moore v. State*, 827 N.E.2d 631, 637 (Ind. Ct. App. 2005), *trans. denied*. "Probable cause exists when an officer has knowledge of facts and circumstances that would lead a reasonably prudent person to believe that a crime has been committed." *Id*. "The decision to issue the warrant should be based on the facts contained in the affidavit and the rational and reasonable inferences drawn therefrom." *Redden v. State*, 850 N.E.2d 451, 461 (Ind. Ct. App. 2006), *trans. denied*.

"In determining whether an application for a search warrant is supported by probable cause, the issuing magistrate must determine whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Britt*, 810 N.E.2d at 1081 (citing *Query v. State*, 745 N.E.2d 769, 771 (Ind. 2001) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983), *reh'g denied*)). Great deference is accorded the magistrate's determination by the reviewing court. *Id*. This Court does not undertake a de novo determination of probable cause, but reviews the record to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Id*.

Here, during a telephonic hearing, Officer Long presented the facts that supported probable cause for a search warrant; the hearing was transcribed, and Smith attached a copy of this document to his motion to suppress as Exhibit B. *Appellant's App*. at 37-51. Officer Long testified that: (1) he was a regular member of the Terre Haute Police

---

[5] Smith does not make a separate, cogent argument regarding the Indiana Constitution and treats it the same as the Federal Constitution, therefore he has waived any appeal based on Article I, Section 11 of the Indiana Constitution. *See Micheau v. State*, 893 N.E.2d 1053, 1059 n.8 (Ind. Ct. App. 2008), *trans. denied* (2009).

16

Department and a K-9 handler, *id.* at 45; (2) on June 17, 2011, he initiated a traffic stop on I-70 on a U-Haul truck after he observed the vehicle crossing the center lane on the left, and crossing the fog line on the right several times, *id.* at 45-46; (3) he identified Smith by his Ohio driver's license, *id.* at 46; (4) he advised Smith of the reason for the stop and requested information for the truck rental, *id.*; (5) he requested that Smith step back to Officer Long's vehicle while he wrote a warning for the violation of unsafe lane movement, *id.* at 45; (6) during this contact, he noted Smith was sweating profusely and pacing in circles, *id.* at 46-47; (7) Smith said he was moving his friend's aunt's belongings from Texas to Ohio, *id.* at 47; (8) Smith said he was following his friend, but Officer Long observed no other vehicles that appeared to be traveling with Smith, *id.* at 47-48; (9) Officer Long requested assistance from Officers Ralston and Carden, who arrived minutes later, *id.* at 48; (10) once the officers arrived, Officer Ralston continued to complete the warning ticket, *id.*; (11) meanwhile, Officer Long walked his K-9 partner Shadow around the U-Haul, and the dog "indicated" on the vehicle, *id.* at 48; (12) Shadow is certified in the detection of marijuana, cocaine, and other drugs, *id.* at 48-49. Based on this testimony, Judge Bolk found probable cause supported the issuance of a warrant.

Prior to trial, Smith filed a motion to suppress the evidence obtained pursuant to the warrant. In his motion, he did not question Officer Long's reason for the initial stop; instead, he alleged that "[b]y extending the detention to conduct a drug dog sniff of the vehicle, [Officer Long] exceeded the scope of the original traffic stop without probable cause." *Id*. at 34. During the suppression hearing, Officers Ralston and Carden provided

testimony that was consistent with the testimony Officer Long had given during the telephonic hearing for the warrant. The trial court denied Smith's motion to suppress the evidence after finding that Smith was not unduly detained. The trial court reasoned as follows:

> With respect to this particular issue, I have also spent [a] considerable amount of time reading cases that relate to these kinds of stops. And I've been doing that now for over ten years. And continue to do it, and I've looked at these cases. I understand what you are asking the court do. But, let me tell you how I see it at this point. It appears to me that that there was testimony that the officers were working as a team, that they considered I-70 to be dangerous. That this stop occurred at night and it was in a known corridor where drug trafficking occurs. And the testimony that I heard was that Officer Long requested, first of all, indicated to his team members that he was about, that he was making a stop of this U-Haul and subsequently asked for backup which was appropriate in the context. And that they appeared within minutes. And the testimony that I heard was a minute or two. When the officers arrived they observed Officer Long interacting with the defendant on the hood of the vehicle, writing out what appeared to be a warning. And then, that Officer Ralston began completing that task during which time, Officer Long got the K-9 Shadow to conduct a dog sniff search. And before the warning was completed, the dog indicated on the U-Haul vehicle. That's the testimony that I heard. And all this happened in a relatively short period of time. I think well within the confines of requirements of not only in the United States Constitution, but the Indiana Constitution. For those reasons, I find the stop to be reasonable, the search to be reasonable, the request for a warrant to be reasonable and show that the motion to suppress is denied.

*Suppression Hr'g* at 97-99.

We agree with the trial court's sound reasoning. Here, Officer Long's testimony during the telephonic hearing revealed that he stopped Smith for unsafe lane movement. *See Navarro v. State*, 855 N.E.2d 671, 673 (Ind. Ct. App. 2006) (Navarro was stopped for unsafe lane movement). While still completing the warning, fellow officers arrived at the scene. While Officer Ralston was completing the written warning, Officer Long took

18

Shadow, a trained narcotics dog, around the U-Haul truck. *See Myers v. State*, 839 N.E.2d 1154, 1158 (Ind. 2005), *cert denied*, 126 S. Ct. 2295 (2006) (dog sniffs are not "searches" requiring probable cause under the Fourth Amendment). Shadow made an indication to the presence of drugs in the vehicle. Finding probable cause for the search, Judge Bolk issued a warrant. At the suppression hearing, Smith did not dispute the validity of the stop; instead, he argued that the length of the stop was unconstitutional, and therefore, the evidence seized following that stop should be suppressed. The trial court was unconvinced and denied Smith's motion to suppress. At trial, Smith again objected to the introduction of the cocaine evidence, to which the trial court responded, "All right, I'm going to show continuing objection by defense counsel, and incorporate previous arguments made in proceedings before this court. Show the objection overruled . . . ." *Jury Tr*. at 185. Other than the arguments made at the suppression hearing, Smith has offered no evidence to suggest that the stop was unreasonable, the length of the stop was unreasonable or that the search warrant was not supported by probable cause. The trial court did not abuse its discretion in admitting at trial the cocaine evidence that was seized pursuant to a valid search warrant.

Affirmed.

MATHIAS, J., and CRONE, J., concur.