## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 29 2016, 8:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gary L. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Alvin Richard,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 29, 2016

Court of Appeals Case No.
71A03-1510-CR-1740

Appeal from the St. Joseph
Superior Court

The Honorable Elizabeth C.
Hurley, Judge

Trial Court Cause No.
71D08-1211-FC-274

**Baker, Judge.**

[1] Alvin Richard appeals his conviction for Class C Felony Burglary,[1] arguing that there was not probable cause supporting a search warrant, that the destruction of physical evidence denied him due process, and that his eight-year sentence was inappropriate. Finding that there was probable cause, that he was not denied due process, and that the sentence was not inappropriate, we affirm.

## Facts

[2] In 2012, Sergeant Cynthia Guest of the St. Joseph County Police began investigating a string of burglaries taking place in the area. The burglaries were often similar in style: they took place at night, and the suspects often took only cigarettes. The surveillance tapes revealed more similarities: the burglaries were executed by a short, heavy-set man who was often accompanied by a second suspect, who was a tall and skinny man. In addition, either a light-colored Cadillac or a white Ford Escort appeared in many of the videos. Suspicion alighted upon Richard for three reasons: he matched the physical description of the suspect; the police pulled him over on three separate occasions near the scene of a recent store burglary, although they did not find any evidence of criminal activity on those occasions; and his two vehicles matched the two vehicles that appeared in many of the surveillance tapes. Sergeant Guest applied for, and was granted, a search warrant to place a GPS tracker on Richard's vehicles. The GPS devices were placed in early November 2012.

---

[1] Ind. Code § 35-43-2-1.

[3] A little more than a week later, the officers who were monitoring the devices noticed that Richard's Cadillac was parked outside of a gas station convenience store around 1:30 a.m. Police went to the gas station and saw that the door was ajar. The owner of the store arrived, took note of several items that were missing, and pulled the store's surveillance tapes.

[4] The police stopped Richard on his way home, and arrested him and his passenger (a tall and skinny man). After obtaining a search warrant for the vehicle, police found a sledge hammer, a pry bar, and clothing that matched what was captured on the surveillance tape (including a mask). The officers also found two counterfeit dollar bills—the owner of the gas station had taped them next to the cash register to help employees spot fake bills.

[5] On November 13, 2012, the State charged Richard with Class C felony burglary. Richard waived his right to trial by jury, and he filed a motion to suppress any evidence stemming from the GPS tracking devices. He argued that there was not probable cause to issue the warrant that authorized the GPS tracker placement, and that the probable cause affidavit contained misleading and stale information. After a hearing, the trial court denied Richard's motion.

[6] At the August 21, 2015, bench trial, Richard also objected to the admission of photographic evidence. The State had already tried and convicted the other suspect in the burglaries, and erroneously destroyed the physical evidence after that trial. For Richard's trial, the State presented photographs of the evidence that had been destroyed. Richard contended that the State had destroyed

exculpatory evidence and that this violated his due process rights. The trial court overruled this objection and, following trial, found Richard guilty as charged. After a sentencing hearing on October 9, 2015, the trial court sentenced Richard to eight years imprisonment, fully executed. Richard now appeals.

# Discussion and Decision

Richard has three arguments on appeal: 1) the trial court erred by admitting evidence stemming from the placement of the GPS devices, 2) the trial court erred by admitting photographs of evidence that had been destroyed, and 3) the sentence imposed by the trial court was inappropriate in light of the nature of the offense and his character. We will consider each in turn.

# I. The GPS Devices

First, Richard argues that there was not probable cause to believe that evidence of criminal activity would be discovered by the placement of the GPS devices. He points to the three occasions on which he was pulled over near recent burglaries and emphasizes that the police did not discover any inculpatory evidence. He contends that this "suggests that a search would *not* turn up any evidence of crime since each previous encounter with Richard following a burglary found no evidence of the burglary in his vehicle." Appellant's Br. p. 8 (emphasis original).

Typically, the admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a

showing of abuse of discretion. *Prewitt v. State*, 761 N.E.2d 862, 869 (Ind. Ct. App. 2002). This occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court. *Gibson v. State*, 733 N.E.2d 945, 951 (Ind. Ct. App. 2000). But when the trial court's evidentiary ruling is predicated on an issue that impugns the constitutionality of a search and seizure of evidence, this raises a question of law, and such questions are reviewed de novo. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014).

[10]  Placement of a GPS device on a vehicle constitutes a search. *United States v. Jones*, 132 S.Ct. 945, 949 (2012). In almost all cases involving a GPS device, the police must obtain a search warrant. *Keeylen v. State*, 14 N.E.3d 865, 872-73 (Ind. Ct. App. 2014), *clarified on reh'g*, 21 N.E.3d 810 (Ind. Ct. App. 2014). Probable cause must exist before a search warrant may be issued. *Johnson v. State*, 32 N.E.3d 1173, 1176 (Ind. Ct. App. 2015). Probable cause exists for issuing a search warrant where the facts and circumstances would lead a reasonably prudent person to believe that a crime had been committed. *Smith v. State*, 981 N.E.2d 1262, 1271 (Ind. Ct. App. 2013).

[11]  We cannot agree that police lacked probable cause in this case. Richard suggests that the warrant was based solely on the observation of the light-colored Cadillac "without any more specific information, no make, no specific color, no license plate number, [and] no identifying characteristics to distinguish the vehicle. . . ." and that thousands of vehicles match this description. Appellant's Br. p. 9. Richard is certainly correct that if the police only had information regarding the color and manufacturer of a vehicle seen

near a crime, they would not have probable cause to place GPS trackers on every such vehicle in the area.

[12] But this is not the only fact linking Richard to criminal activity. We have stressed that probable cause is a fluid concept that must be evaluated based on the facts of each case. *Bennett v. State*, 5 N.E.3d 498, 506 (Ind. Ct. App. 2014). Richard matched the physical description of the suspect, observed either by witnesses or surveillance tape, for more than ten smash-and-grab robberies. Moreover, Richard was observed by police on at least three separate occasions near the scene of recent burglaries, all at different convenience stores. Finally, both of Richard's vehicles were seen in surveillance tapes. Such a confluence of facts would lead a reasonably prudent person to believe that Richard was involved in criminal activity, and the police acted appropriately to use a GPS pursuant to a search warrant. Richard's argument to the contrary—that the police had to let him continue to commit burglaries until he forgot his mask, parked his car with the license plate toward the surveillance camera, or was caught in the act—is simply unavailing.

## II. Evidence Destruction

[13] Richard next argues that the State's destruction of physical evidence compels a reversal. We first note that it was clearly error to destroy evidence. Indiana Code section 35-33-5-5(a) mandates that "all items of property seized by any law enforcement agency as a result of an arrest, search warrant, or warrantless search, shall be securely held by the law enforcement agency under the order of

the court trying the cause. . . ." The question is what remedy, if any, Richard is entitled to.

[14] Richard frames his argument as a claim that the trial erred by admitting photographs of the evidence in lieu of the destroyed evidence. But he makes no argument that the photos were inherently inadmissible: he does not claim that they were unduly prejudicial, or irrelevant, or barred by any rule of evidence. Rather, his claim is that the destruction of the evidence mandates a finding that his due process rights were violated.

[15] To establish a due process violation, Richard must show either that the evidence was "material exculpatory evidence" (rather than merely "potentially useful evidence") or that the State acted in bad faith to destroy it. *Blanchard v. State*, 802 N.E.2d 14, 26-27 (Ind. Ct. App. 2004). To constitute material exculpatory evidence, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). Where destroyed evidence could only have been subjected to tests, the results of which might have exonerated the defendant, the evidence is merely potentially useful. *State v. Durrett*, 923 N.E.2d 449, 453 (Ind. Ct. App. 2010).

[16] Richard argues that the evidence was exculpatory because one sweatshirt collected by the police was different in color than what was captured on surveillance tape. But the factfinder was able to view both the tape and a

photograph of the sweatshirt to determine whether there was a discrepancy in the color. Moreover, Richard was tracked by GPS to the scene of a burglary and then found with items stolen from the burglarized store; clearly, the precise color of a sweatshirt appearing on surveillance tape would not exculpate him.

[17] Richard is correct that the destroyed evidence was potentially useful in that the pry bar and sledge hammer could have been tested to demonstrate whether or not they were used in the burglary. Therefore, the inquiry turns to whether the State acted in bad faith. Richard must show more than simple bad judgment or negligence; he must show conduct that implies the conscious doing of wrong because of dishonest purpose or moral obliquity. *Land v. State*, 802 N.E.2d 45, 52 (Ind. Ct. App. 2004).

[18] Richard points to a letter written by the prosecutor's office to the police department, which requested that the evidence not be destroyed. He argues that since the police destroyed the evidence anyway, they acted in bad faith.

[19] We disagree: this is clearly a case of negligence rather than moral obliquity. The police destroyed the evidence after the conclusion of the trial of the other burglar. In fact, the letter from the prosecution demonstrates the absence of bad faith, rather than its presence; there was no conscious plan by the State to eliminate the evidence, it happened due to miscommunication and mistake. In sum, we find no error, constitutional or otherwise, in the admission of this evidence.

# III.  Rule 7(B) Review

[20]  Richard received the maximum sentence available for Class C felony burglary: eight years executed.  Ind. Code § 35-50-2-6(a).  The advisory sentence for that crime is four years.  *Id.*  He argues that his sentence is inappropriate.

[21]  Indiana Appellate Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  The principal role of such review is to attempt to leaven the outliers, but not to achieve a perceived "correct" sentence.  *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).  Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference.  *Id.* at 1222.

[22]  Turning to Richard's offense, we will concede that this particular crime was not the worst of the worst.  Richard broke into a gas station and stole money.  If we were only to consider the nature of the offense, a maximum sentence would give us pause.

[23]  But we must also consider Richard's character.  Richard has an extensive criminal history: he has four felony convictions and nine total convictions, not to mention an extensive juvenile criminal history.  Among his previous offenses were robberies and burglaries.  The present offense occurred not long after he was released from parole for another crime.  Despite repeated chances to turn his life around and cease his criminal endeavors, Richard continued to

burglarize businesses. Richard points to the several years leading up to his trial in which he obtained a job and stayed out of trouble—but this was only done after he was charged with the present felony, and is not necessarily indicative of what he would have been doing otherwise.

[24] Considering both the nature of the offense and Richard's character, we cannot say that the sentence imposed by the trial court is inappropriate.

[25] The judgment of the trial court is affirmed.

May, J., and Brown, J., concur.