# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 27 2020, 8:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Brian Vukadinovich
Wheatfield, Indiana

ATTORNEYS FOR APPELLEE
KALLIE LOLKEMA

Shawn C. Swope
Cassandra J. Neal
Swope Law Offices, LLC
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brian Vukadinovich,

*Appellant/Cross-Appellee/Plaintiff,*

v.

Kallie Lolkema and Donald Webb,[1]

*Appellees/Cross-Appellants/Defendants.*

August 27, 2020

Court of Appeals Case No.
19A-CT-2353

Appeal from the LaPorte Superior Court

The Honorable Michael S. Bergerson, Judge

Trial Court Cause No.
46D03-1611-CT-1809

---

[1] Webb does not participate in this appeal. However, pursuant to Indiana Appellate Rule 17(A), a party below is a party on appeal.

**Bradford, Chief Judge.**

# Case Summary

[1]     Brian Vukadinovich initiated the underlying lawsuit after his vehicle was rear-ended by a vehicle being driven by Kallie Lolkema.  Following trial, the jury found in favor of Lolkema.  Vukadinovich raises numerous contentions on appeal.  On cross-appeal, Lolkema contends that the trial court abused its discretion by denying her request for attorney's fees.  We affirm.

# Facts and Procedural History

[2]     On August 14, 2016, Lolkema rear-ended Vukadinovich's vehicle while Vukadinovich was stopped at a traffic light.  Lolkema, who was driving a vehicle owned by Donald Webb, was in the process of stopping at the time of the contact and was moving at a speed of approximately "[t]wo to three miles per hour."  Tr. Vol. III p. 129.  The contact caused minor damage to Vukadinovich's vehicle, leaving a small dent in the rear bumper.[2] Vukadinovich subsequently fixed the dent by pushing it out with his hand.

[3]     On November 10, 2016, Vukadinovich filed suit, claiming to have been injured by the accident.  Vukadinovich filed a motion for default judgment, which was

---

[2]   The responding officer also noted seeing a scratch on the bumper, but Vukadinovich could not remember whether the scratch was there prior to the accident.

granted with respect to both Lolkema and Webb on March 23, 2017.  The

default judgment against Lolkema was vacated on July 11, 2017.[3]  Lolkema's

counsel subsequently tendered a qualified settlement offer, which was rejected

by Vukadinovich.  The matter proceeded to trial on June 24–25, 2019, after

which the jury found for Lolkema and Webb.  The trial court denied

Vukadinovich's subsequent motions for judgment notwithstanding the verdict

and to correct error following a hearing.  The trial court also denied Lolkema's

request for attorney's fees.

# Discussion and Decision

## I.  Direct-Appeal Issues

Vukadinovich raises numerous contentions on direct appeal which we restate as

whether (A) the trial court and opposing counsel demonstrated bias or

committed reversible error during *voir dire*; (B) the trial court abused its

discretion with regard to the admission/exclusion of certain evidence; (C) the

trial court abused its discretion in instructing the jury; (D) the jury committed

misconduct; (E) the evidence is insufficient to support the jury's verdict; and (F)

the trial court abused its discretion in denying Vukadinovich's motion to correct

error.

---

[3] The default judgment against Webb remained in effect.

## A. *Voir Dire*

Vukadinovich contends that the trial court and opposing counsel committed reversible error by allegedly making visible gestures or audible comments during his questioning of prospective jurors during *voir dire*. Vukadinovich claims that these alleged gestures and comments, together with the trial court's failure to formally admonish opposing counsel from making such gestures or comments, demonstrates bias by the trial court. Vukadinovich, the trial court, and opposing counsel discussed the alleged gestures and comments outside of the presence of the jury. Vukadinovich alleged that both the trial court and opposing counsel made improper audible comments during his questioning of prospective jurors. The record, however, does not support Vukadinovich's claim that either the trial court or opposing counsel made any improper audible comments. Both the trial court and opposing counsel flatly denied making any such comments and the transcript supports their denials.

As for the alleged gestures, Vukadinovich has failed to describe the alleged gestures in his appellate brief and the record contains no description of the alleged gestures. The trial court acknowledged making some kind of gesture in response to a general question asked by Vukadinovich, indicating that it "thought that generally [Vukadinovich] invited that response. That's how I took it." Tr. Vol. II p. 72. The trial court apologized for making the gesture and indicated that it would refrain from making any further gestures. Opposing counsel denied making any gestures and the record contains no proof that opposing counsel made any gestures. Vukadinovich has failed to prove that this

nondescript alleged gesture by the trial court indicated bias or constituted reversible error.

[7]     As for the trial court's failure to formally admonish opposing counsel from making any gestures or comments while Vukadinovich was questioning the prospective jurors, the record does not support Vukadinovich's assertion that the trial court inappropriately protected opposing counsel. When Vukadinovich requested the formal admonishment, the following exchange occurred:

> MR. VUKADINOVICH: … Because he made a physical and verbal comment and that's inappropriate and he needs to be told not to do that anymore.
>
> THE COURT: I think he understands.
>
> MR. VUKADINOVICH: Does he?
>
> THE COURT: I believe he does.
>
> MR. VUKADINOVICH: Can he say that or do you have to speak for him?
>
> THE COURT: [Opposing counsel]?
>
> [OPPOSING COUNSEL]: I'm well aware of the rules, Your Honor. And I did not say anything nor would I nor did I. Actually that's not true, I believe there was one point where I repeated a question during voir dire, because Mr. Vukadinovich didn't hear from Juror 4085 on the right hand side, because he

was proceeding along the lines of asking him, or following up on the wrong question.

Tr. Vol. II p. 76. The exchange confirms that opposing counsel understood that he was not to make any improper comments or gestures while Vukadinovich was speaking to the jury. The only comment he made was to repeat a question from a prospective juror when Vukadinovich apparently did not hear it. Vukadinovich has failed to establish bias or reversible error with regard to the alleged comments and/or gestures.[4]

## B. Admission/Exclusion of Evidence

[8] Vukadinovich contends that the trial court abused its discretion in admitting certain evidence and in excluding other evidence at trial.

> Generally, the admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Zemco Mfg., Inc. v. Pecoraro*, 703 N.E.2d 1064, 1069 (Ind. Ct. App. 1998), *trans. denied*. We will reverse a trial court's decision only for an abuse of discretion, that is, when the trial court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* Erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. *Id.* Further, any error in the admission of evidence is harmless if the

---

[4] We are unpersuaded by Vukadinovich's claim that the trial court demonstrated bias by giving an allegedly untruthful answer when Vukadinovich asked whether there was a security camera in the courtroom. The trial court indicated that there was not. Vukadinovich asserts on appeal that this statement was false and that there was a security camera in the courtroom on the day of trial. Vukadinovich, however, has failed to provide any proof that there was a security camera in the courtroom, merely pointing to a local rule that provides that *if* there is a security camera in the courtroom, the recordings from the camera are confidential unless a court order provides otherwise.

same or similar evidence is submitted without objection. *Homehealth, Inc. v. N. Ind. Pub. Serv. Co.*, 600 N.E.2d 970, 974 (Ind. Ct. App. 1992), *reh'g denied*.

*R.R. Donnelley & Sons Co. v. N. Texas Steel Co.*, 752 N.E.2d 112, 126–27 (Ind. Ct. App. 2001).

### 1. Admitted Evidence

Vukadinovich claims that the trial court abused its discretion in admitting an estimate for repairs to his vehicle, asserting that the estimate was not relevant to trial because he had not included a claim for damages to his vehicle in his request for damages. Vukadinovich, however, detailed damage to his vehicle that he attributed to the accident on both direct and cross-examination, including testimony regarding a spring "somewhere on the car." Tr. Vol. III p. 28. Vukadinovich testified that he took the vehicle to an auto-repair shop to get an estimate on the cost of fixing the spring. The estimate at issue shows that the spring was located on the front of the vehicle, nowhere near the other claimed damage on the rear bumper. It also detailed other related damage, none of which Vukadinovich attributed to the accident.

Lolkema argues that the trial court acted within its discretion in admitting the estimate because it rebutted Vukadinovich's assertion that the damage to the spring was caused by the accident. "Rebuttal evidence is that which tends to explain, contradict, or disprove an adversary's evidence." *White v. White*, 655 N.E.2d 523, 529 (Ind. Ct. App. 1995). "The scope of rebuttal and the order of evidence are matters left to the discretion of the trial court." *Reed v. Bethel*, 2

N.E.3d 98, 111 (Ind. Ct. App. 2014). We agree with Lolkema that the estimate was relevant as it rebutted Vukadinovich's testimony. The trial court, therefore, did not abuse its discretion in admitting the estimate at trial.[5]

## 2. Excluded Evidence

### i. The Indiana Driver's Manual

[11] Vukadinovich argues that the trial court abused its discretion in excluding his copy of the Indiana Driver's Manual from evidence. He claims that it was relevant to his claim for damages in that it warns against distracted driving; gives tips for avoiding accidents, including avoiding following too closely behind another vehicle; and provides that if an individual is involved in an accident, the individual should call for help before moving the vehicle. Evidence Rule 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." The incident occurred when Lolkema rear-ended Vukadinovich's vehicle while he was stopped at a stop light. While Vukadinovich asserted that he believed Lolkema was following too closely, he indicated that he believed that she had been doing so "miles back." Tr. Vol. II p. 200. Further, Vukadinovich does not allege that Lolkema moved or drove her vehicle before being told it was appropriate to do

---

[5] To the extent that Vukadinovich argues on appeal that Lolkema failed to provide a sufficient foundation for the estimate, Vukadinovich did not object on this ground at trial and has therefore waived the claim on appeal. *See Malone v. State*, 700 N.E.2d 780, 784 (Ind. 1998) (providing that a party waives appellate review if the party objects on one ground at trial and seek reversal on appeal using a different ground).

so by the responding officer. Vukadinovich fails to explain how the portions of the Indiana Driver's Manual that he cites are relevant to his claim that he was injured when his vehicle was rear-ended at the stoplight by the vehicle being driven by Lolkema. The trial court, therefore, did not abuse its discretion in excluding Vukadinovich's copy of the Indiana Driver's Manual from evidence.

### ii. After-Visit Summary

Vukadinovich also claims that the trial court abused its discretion in excluding an after-visit summary ("the AVS") that was given to him after he visited the emergency room following the accident. Lolkema objected to the AVS on the foundational grounds. The trial court sustained Lolkema's objection but allowed Vukadinovich to testify about his condition following the accident and his treatment in the emergency room. Vukadinovich asserts that the AVS should have been admitted because it was a medical record. While medical records may be admissible when a proper foundation is made, Vukadinovich failed to provide a proper foundation for the AVS or establish that it qualified as a medical record. Given the complete lack of foundation offered by Vukadinovich, we cannot say that the trial court abused its discretion in this regard.

### iii. Payment Demands by Bill Collectors

Vukadinovich also claims that the trial court abused its discretion in excluding "evidence of payment demands from bill collectors for medical billings that were sent to Vukadinovich several times over that would have demonstrated to the jury Vukadinovich's emotional and mental distress from having to deal with

the constant demands for payment." Appellant's Br. p. 27. Review of the record reveals that the trial court admitted numerous bills and collection demands from alleged bill collectors. The trial court merely excluded a few duplicative offerings. Given that the excluded documents were duplicates of other admitted documents, the exclusion of these documents was, at most, harmless error. *See Spaulding v. Harris*, 914 N.E.2d 820, 830 (Ind. Ct. App. 2009) (providing that the where the excluded evidence is merely cumulative of other evidence, its exclusion is harmless error). As such, we cannot say that the trial court abused its discretion in this regard.

### iv. Cross-Examination on Categorization of Brake Failure

[14] Prior to trial, Lolkema's counsel filed an affidavit with the trial court stating that Webb's insurance company had agreed that if the default were vacated, it would waive its reservations of right for notice and cooperation and coverage would apply. In this affidavit, counsel categorized the brake failure that resulted in Lolkema's failure to stop as "catastrophic." Appellant's App. Vol. II p. 189. While testifying, Lolkema categorized the brake issue as a "hiccup" rather than a "catastrophic" failure. Tr. Vol. III p. 131. Vukadinovich attempted to cross-examine Lolkema about why her categorization differed from her counsel's prior categorization after she indicated that she would not categorize the brake failure as "catastrophic." Lolkema objected, arguing that any attack on her counsel, including an allegation that counsel was being untruthful when he made the prior characterization, was covered by a motion in liminie. The trial court reviewed the applicable motion in liminie, agreed,

and sustained Lolkema's objection. Vukadinovich argues that the trial court abused its discretion by not allow him to cross-examine Lolkema on the inconsistency between her counsel's categorization of the failure and her testimony. Vukadinovich, however, has failed to establish that Lolkema could have provided any further insight to the characterization used by her counsel at a prior stage of the trial or that the use of different characterizations impacted his substantial rights in any way.

[15] Regardless of how the failure was characterized, there was evidence of brake failure presented at trial. Lolkema argues that "the choice of adjectives, which appears to be Vukadinovich's main source of discontent, has no probative value" as the evidence clearly demonstrates that brake failure occurred. Appellee's Br. p. 21. We agree. The trial court did not abuse its discretion in this regard.

### v. Cross-Examination Regarding Contributory Fault

[16] At trial, Vukadinovich attempted to cross-examine Lolkema regarding her counsel's contentions that she would assert contributory fault as an affirmative defense at trial. In doing so, the following exchange occurred:

> MR. VUKADINOVICH: Okay, now your lawyer, your lawyer, now your lawyer said, when he asked you, well, why didn't, why did you wait for you hired me and then, and then your lawyer said, because we conducted discovery and therefore, we got information that, that Donald Webb is somehow at fault here, so what information is that, [Lolkema]?
>
> MR. SWOPE: Objection, that's privileged.

MR. VUKADINOVICH:  No, it's not privileged.

MR. SWOPE:  Unless I get to put him on the stand and tell everything about why I did that and I will, I will make an offer of proof right now as to everything I know.

THE COURT:  Well, we don't have to get there, because you don't have to -- she does not have to disclose what she and her lawyer, uh, discussed or information that she obtained from her attorney as potential work product or anything else.

MR. VUKADINOVICH:  I fully understand that.

THE COURT:  Okay, what, what's the nature of your question?

MR. VUKADINOVICH:  Well, we're certainly entitled to, to the proof that since they're going to maintain and have maintained that, that they assert that it was Webb's fault here after they did discovery.  I'm asking, I'm not asking about any discussions between her and her lawyer, I'm asking what that discovery was?  What's the evidence?  What evidence is there that it was Webb's fault, because he said that that's the reason they put Webb on their defense.

THE COURT:  Well, there's a police report that says, that she said it in her own testimony as well as to the police at the day that the, the brakes failed.

MR. VUKADINOVICH:  But the, but the police stepped up and the police didn't say this.

MR. SWOPE:  Can I ask you a question? Can we, appro -- this is the problem.

MR. VUKADINOVICH:  But did the police --

THE COURT: Hold on a second.

MR. VUKADINOVICH: -- the police report doesn't say that Donald Webb was at fault in this accident?

THE COURT: No.

MR. VUKADINOVICH: She says that.

THE COURT: It's up to -- it's up to the Jury to decide what percentage to apportion to the Defendants. End of story. Move on.

Tr. Vol. III pp. 201–02. This exchange demonstrates that Vukadinovich was attempting to question Lolkema about privileged work product, *i.e.*, documents that counsel relied on to craft trial strategy.

[17]      Indiana Trial Rule 26(B)(3) defines the work-product privilege. It provides that a party may obtain discovery of documents and tangible things otherwise discoverable and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery: 1) has a substantial need for the materials in the preparation of his case; and 2) is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

*Brown v. Katz*, 868 N.E.2d 1159, 1166 (Ind. Ct. App. 2007). Vukadinovich indicated that he wished to know what evidence Lolkema's counsel relied on in raising an affirmative defense of contributory fault. Vukadinovich, however, has failed to show that he had a substantial need for any of the requested information or that he could not otherwise obtain the materials. As the trial

court pointed out, the evidence of brake failure, which Lolkema's counsel relied upon in arguing contributory fault, was known to all parties at all stages of this case, beginning with Lolkema's claim of brake failure in the police report. The trial court did not abuse its discretion in sustaining Lolkema's objection to this line of questioning.

## C.  Jury Instructions

[18]  Vukadinovich takes issue with the manner in which the trial court instructed the jury, referring to it as an "injudicious train wreck." Appellant's Br. p. 33.

> The manner of instructing a jury is left to the trial court's discretion. *Kimbrough v. Anderson*, 55 N.E.3d 325, 339 (Ind. Ct. App. 2016), *trans. denied*. We consider whether: (1) the instruction correctly states the law; (2) the record contains evidence to support the instruction; and (3) the substance of the tendered instruction is covered by the other instructions that are given. *Id.* An instruction is properly rejected if it could mislead or confuse the jury. *Miller v. Ryan*, 706 N.E.2d 244, 248 (Ind. Ct. App. 1999), *trans. denied*.
>
> To determine whether sufficient evidence exists to support an instruction given by the trial court, we look only at the evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom. *Foddrill v. Crane*, 894 N.E.2d 1070, 1078 (Ind. Ct. App. 2008), *trans. denied*. When a jury is given an incorrect instruction, we will not reverse the judgment unless the party seeking a new trial shows a reasonable probability that its substantial rights were adversely affected. *Kimbrough*, 55 N.E.3d at 339.

*Burdick v. Romano*, 148 N.E.3d 335, 340 (Ind. Ct. App. 2020).

### 1. Attack on the Trial Court's Competence

[19]    Vukadinovich first argues that the trial court "woefully failed" to perform its duties competently. Appellant's Br. p. 34. In raising this argument, Vukadinovich makes a series of inflammatory and personal attacks on the trial court. Lolkema asserts that the tenor of Vukadinovich's argument mirrors his behavior at trial where his "shouting, interruptions, [and] attacks on everyone in the court room who disagreed with him" caused him difficulty and apparent confusion. Appellee's Br. p. 23. Without commenting on the tenor of Vukadinovich's argument on appeal, we conclude that Vukadinovich has failed to provide any proof that the trial court did not perform its duties competently or that the alleged incompetence adversely affected his substantial rights.

### 2. Proposed Instruction #2

[20]    Vukadinovich argues that the trial court abused its discretion in refusing to give his proposed jury instruction #2, which reads as follows:

> At all relevant times when the events in this case happened, there were in full force and effect Indiana statutes that provided in part as follows:
>
> Ind. Code Sec. 9 21 5 1.
>
> A person may not drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, having regard to the actual and potential hazards then existing. Speed shall be restricted as necessary to avoid colliding with a person, vehicle, or other conveyance on, near, or entering a highway in compliance with legal requirements and with the duty of all persons to use due care.

I.C. Sec. 9 21 5 4

The driver of each vehicle shall, consistent with section 1 [IC 9 21 5 1] of this chapter, drive at an appropriate reduced speed as follows:

…

(1) When approaching and crossing an intersection or railway grade crossing.

Indiana Code Title 9. Motor Vehicles Sec. 9-21-8-l4

A person who drives a motor vehicle may not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of both vehicles, the time interval between vehicles, and the condition of the highway.

If you decide from the greater weight of the evidence that Kallie N. Lolkema violated any of these Indiana Codes, and that the violation was not excused, then you must decide that Defendant Kallie N. Lolkema was negligent.

Appellant's App. Vol. III p. 73 (brackets in original).

[21]     In arguing that the trial court did not abuse its discretion by refusing to give Vukadinovich's tendered instruction, Lolkema stated the following:

The accident did not occur while Lolkema was allegedly following too closely or speeding — it occurred miles later while Vukadinovich was stopped at a stoplight and Lolkema rolled into him at 2-3 mph.

Further, Vukadinovich testified that he did not know what

> Lolkema's speed was before the accident. This evidence,
> combined with Lolkema's testimony that "I was [also] coming to
> a gradual stop… [going] two to three miles an hour" that the
> brakes "hiccupped as I was trying to gradually stop" and the cars
> met with an impact that caused "an indentation on the bumper"
> that Vukadinovich himself "pushed out" do not support a jury
> instruction for following too closely or speeding. As there existed
> no evidence that Lolkema was following too closely or speeding
> at the time of the occurrence, there was no legal or factual basis
> to give the instruction.

Appellant's Br. p. 24 (internal record cites omitted). We agree with Lolkema and accordingly conclude that the trial court did not abuse its discretion by refusing to give Vukadinovich's proposed instruction.

### 3. *Proposed Instruction #6*

[22] Vukadinovich also argues that the trial court abused its discretion by giving final instruction #15 rather than his proposed instruction #6. Proposed instruction #6 reads: "An injury is 'foreseeable' when a person should realize that her act or failure to act might cause that injury." Appellant's App. Vol. III p. 74. Final instruction #15 reads: "An injury and/or Property damage are 'foreseeable' when a person should realize that his or her act or failure to act might cause that injury and/or property damage." Appellant's App. Vol. II p. 55. Because the substance of Vukadinovich's proposed instruction was included in and covered by final instruction #15, we conclude that the trial court did not abuse its discretion in this regard. *See Smith v. State*, 981 N.E.2d 1262, 1269 (Ind. Ct. App. 2013) (providing that the trial court did not abuse its

discretion in refusing to use a tendered instruction because the substance of the instruction was covered by other instructions given by the court).

### 4. *Proposed Instruction #8*

[23] Vukadinovich argues that the trial court abused its discretion by failing to give his proposed jury instruction #8, which reads:

> The law recognizes two kinds of damages when a person is harmed due to negligence. The first are "special damages" for the economic losses suffered by plaintiff as a result of defendant's negligence, such as wage loss and medical expenses. The second are "general damages" for the human loss resulting from defendant's negligence such as pain, disability, suffering or disfigurement. Your verdict should include money for both the economic or "special damages" and the human loss or "general damages" proven by the greater weight of the evidence to have resulted from defendant's negligence.

Appellant's App. Vol. III p. 75.

[24] While the trial court did not give the proposed instruction, it did instruct the jury at length as to damages and what damages were recoverable, if proven, by Vukadinovich. Specifically, final instruction #23A, which was read to the jury, covered the types of damages available, instructing the jury as follows:

> If you decide from the greater weight of the evidence that a Defendant is liable to the Plaintiff, then you must decide the amount of money that will fairly compensate the Plaintiff.
>
> In deciding the amount of money you will award, you may consider the nature and extent of the injury and the effect of the injury on the Plaintiff's ability to function as a whole person;

Two, the physical pain and mental suffering of the Plaintiff as a result of the, of his injuries;

And three, the reasonable value of necessary medical care, treatment, and medic -- and services Plaintiff was provided as a result of the injury.

Tr. Vol. IV pp. 90–91. The instructions given covered the substance of the proposed instruction. As such, we conclude that the trial court did not abuse its discretion by refusing to give the proposed instruction. *See Smith*, 981 N.E.2d at 1269.

### 5. Final Instruction #18

[25] Vukadinovich argues that the trial court abused its discretion in giving final instruction #18, which reads as follows:

It is the duty of the court to give you instructions on all phases of the case. Thus, the fact that the court gives you instructions on damages is not to be taken by you as any intimation by the court that the plaintiff is entitled to recover damages or that defendants are liable for such damages. Moreover, the attorneys for the defendants have the right to discuss damages in their closing argument and such discussion is not to be taken by you as an admission that the plaintiff is entitled to recover damages or that the defendants are liable.

You are to consider the question of damages only if you have decided that a defendant was negligent and that such negligence was the cause of plaintiff's damages.

Appellant's App. Vol. II p. 58.  Vukadinovich challenges this instruction by asserting that it "unfairly implied" that only Lolkema's attorneys had the right to argue damages during closing argument.  Appellant's Br. p. 38.  While we do not read the instruction as implying that only Lolkema's attorneys could discuss damages during closing argument, we conclude that even if one did read the instruction in such a way, any error in giving the instruction was, at most, harmless.

[26]  The record reveals that Vukadinovich was permitted to, and in fact did, argue damages during his closing argument.  Vukadinovich has failed to prove that there was a reasonable probability that his substantial rights were adversely affected by the giving of this instruction.  Any error in giving the instruction, therefore, does not warrant reversal.  *See Burdick*, 148 N.E.3d at 340.

### 6.  *Final Instruction #24/Verdict Form A*

[27]  Vukadinovich argues that the trial court abused its discretion in giving final instruction #24 to the jury and by providing the jury with verdict form A.  Final instruction #24 reads as follows:

> If Brian Vukadinovich is entitled to recover damages from Kallie Lolkema, or Donald Webb, or both, and if so, the amount of those damages, you must apportion the fault of Kallie Lolkema and Donald Webb on a percentage basis.  Do this as follows:
>
> First, if Kallie Lolkema or Donald Webb are not at fault for causing damages, return your verdict for Kallie Lolkema and Donald Webb and against Brian Vukadinovich and deliberate no further.  (Use Verdict Form A)

If Kallie Lolkema or Donald Webb are at fault for causing damages, you must decide Kallie Lolkema's, Kallie Lolkema or Donald Webb and Donald Webb's, percentages of fault that caused the plaintiff's damages. These percentages must total 100 percent. Do not apportion fault to any other person or entity. (Use Verdict Form B)

If you decide that Brian Vukadinovich's [sic] is entitled to recover damages from Kallie Lolkema or Donald Webb, then:

(1)     Decide the total amount of Brian Vukadinovich's damages, if any. Do not consider fault when you decide this amount.

(2)     Multiply the total damages by each Defendants' percentage of fault.

(3)     Return your verdict for Brian Vukadinovich and against each Defendant in the amount of the product of that multiplication. (Use Verdict Form B).

I will give you verdict forms that will help guide you through this process.

Appellant's App. Vol. II p. 88. Verdict form A reads as follows:

VERDICT FORM A, FOR BOTH DEFENDANTS

We, the Jury, decide that the Defendants, Kallie Lolkema and Donald Webb were not at fault for causing damages, and therefore decide in favor of the Defendants, Kallie Lolkema and Donald Webb and against the Plaintiff, Brian Vukadinovich.

Appellant's App. Vol. II p. 89. Vukadinovich argues that the trial court abused its discretion in providing the instruction and form A to the jury because it "confusingly implied that the liability issue was 'all or nothing.'" Appellant's

Br. p. 39. Vukadinovich fails to recognize, however, that the jury was instructed to only use verdict form A if they found for the defendants. The trial court also provided verdict form B to the jury, which reads as follows:

VERDICT FROM [sic] B, FOR THE PLAINTIFF

We, the Jury, assign the following percentage of fault:

  Kallie Lolkema       _____%
  Donald Webb        _____%
  Total           100%

  (The fault percentages listed in the blanks must total 100%)

We decide that the total amount of damages the Plaintiff, Brian Vukadinovich, is entitled to recover, without considering the fault percentages, is $_____. (Enter this amount below as Total Damages)

We therefore calculate the Plaintiff's Verdict Amount as follows:

  Total damages:        $_____
  Kallie Lolkema's percentage of fault  _____%
  Plaintiff's verdict against Kallie Lolkema $_____
  Total damages:        $_____
  Donald Webb's percentage of fault   _____%
  Plaintiff's verdict against Donald Webb $_____

Appellant's App. Vol. II p. 90. Again, the trial court instructed the jury to use verdict form B if they found for Vukadinovich. When read together, we cannot agree that the instruction and verdict forms imply that liability was "all or

none." The instruction clearly informs the jury that they could find for either the defendants or Vukadinovich and instructs them as to which verdict form is appropriate for each potential finding. Vukadinovich has failed to prove that the trial court abused its discretion by giving final instruction #24 and the verdict forms to the jury.

### 7. Final Instruction #2

[28] Vukadinovich also argues that the trial court abused its discretion by failing to give final instruction 2, which reads as follows: "Do not base your verdict on sympathy, bias or prejudice." Appellant's App. Vol. II p. 42. In its order denying Vukadinovich's motion to correct error, the trial court acknowledged that it had inadvertently failed to give the instruction, noting:

> The failure to give the missing instruction was inadvertent; but the substance of said missing instruction was covered in multiple other preliminary and final instructions which required the jury to base their verdict soley [sic] on the evidence admitted and the instructions as to the law. Any error was harmless.

Appellant's App. Vol. II p. 36 n.1. After reviewing all of the trial court's instructions to the jury, we agree with the trial court that the substance of final instruction #2 was covered by the other instructions as the jury was instructed to base its verdict solely on the evidence. As such, the trial court's inadvertent failure to give final instruction #2 was harmless and did not affect Vukadinovich's substantial rights. *See Smith*, 981 N.E.2d at 1269.

### 8. *Final Reading*

Vukadinovich argues that the trial court abused its discretion by erroneously reading the final jury instructions. In support of this argument, Vukadinovich relies on the fact that the trial court noticed just prior to the reading of the final instructions that final instruction #23A had inadvertently been left out of the instructions that the trial court was going to read to the court. The record reveals, however, that prior to instructing the jury, the trial court noticed that final instruction #23A was not initially included in its set of instructions. The trial court added final instruction #23A to its set of instructions and included it in its final instructions to the jury. Vukadinovich has failed to show how the trial court's actions in this regard affected his substantial rights. We therefore conclude that the trial court did not abuse its discretion in this regard.

## D. Jury Misconduct

Vukadinovich alleged jury misconduct in his motion to correct error, arguing that he learned of the alleged misconduct after a friend approached the jury foreman after the conclusion of trial and spoke with him about the jury's verdict. With respect to post-trial testimony from a juror regarding the workings of the jury, Indiana Evidence Rule 606(b)(1) provides as follows:

> *Prohibited Testimony or Other Evidence*. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

In alleging jury misconduct, Vukadinovich does not rely on an affidavit from any member of the jury. Instead, he relies on the affidavit of his friend, Carole Wockner, who, following the conclusion of trial, questioned the jury foreman about the jury's verdict. Wockner averred that

> Secondly, the jury foreman told me that the jury could not find against Ms. Lolkema because she was 'young,' and that they considered her attorney fees for her defense as punishment enough. He also stated that insurance was considered by the jury as sufficient means to compensate Mr. Vukadinovich; hence Ms. Lolkema should not have to bear those costs.

Appellant's App. Vol. II p. 156. For her part, Lolkema asserts that Wockner's affidavit, including the above-quoted portion, contained inadmissible hearsay.

Hearsay is defined as "a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Evid. R. 801(c). Wockner's affidavit contained statements attributed to a declarant, *i.e.*, the jury foreman, that were allegedly made after trial but were introduced in support of Vukadinovich's motion to correct error to prove the truth of the matter asserted. These statements were hearsay. Hearsay statements are not sufficient to prove a claim alleged in a motion to correct error. *See Lemont v. State*, 168 Ind. App. 486, 491, 344 N.E.2d 88, 91 (1976) (providing that an affidavit containing hearsay regarding a post-trial out of court statement by a declarant is insufficient to support a motion to correct error). As such, Wockner's affidavit was not sufficient to support

Vukadinovich's claim of jury misconduct. Vukadinovich had failed to present any admissible evidence supporting his claim of jury misconduct.

## E. Sufficiency of the Evidence to Support Jury Verdict

Vukadinovich also challenges the sufficiency of the evidence to support the jury's verdict. "'Upon appellate review the standard by which the sufficiency of the evidence is measured is that such evidence must have the fitness to induce conviction; it must be adequate to support a conclusion in the mind of reasonable persons." *West v. J. Greg Allen Builder, Inc.*, 92 N.E.3d 634, 643 (Ind. Ct. App. 2017) (quoting *Beaman v. Hedrick*, 146 Ind. App. 404, 405, 255 N.E.2d 828, 829 (1970)). "We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment." *Fowler v. Perry*, 830 N.E.2d 97, 102 (Ind. Ct. App. 2005). Further,

> [w]e define the clearly erroneous standard based upon whether the party is appealing a negative judgment or an adverse judgment. *Garling v. Ind. Dep't Of Natural Res.*, 766 N.E.2d 409, 411 (Ind. Ct. App. 2002), *trans. denied*. Where, as here, the party who had the burden of proof at trial appeals, he appeals from a negative judgment and will prevail only if he establishes that the judgment is contrary to law. *Todd Heller, Inc. v. Ind. Dep't of Transp.*, 819 N.E.2d 140, 146 (Ind. Ct. App. 2004), *reh'g denied*, *trans. denied*. A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion. *Id.*

*Id.*

[34] Vukadinovich appeals from a negative judgment, *i.e.*, the denial of his motion to correct error. He argues that the evidence clearly established Lolkema's fault and liability. While this may be true, Vukadinovich fails to point to any evidence, other than his own self-serving testimony, establishing that he suffered any damages as a result of the accident. In denying Vukadinovich's post-trial challenge to the sufficiency of the evidence to support the jury's verdict, the trial court found

> Pure and simple, [Vukadinovich] failed to meet his burden of proof. The jury was well within its charge to find that [Vukadinovich] failed to present any credible evidence that he was either injured or that the medical bills were related to the accident. [Vukadinovich] failed to call any medical expert or treating physician(s) and thus relied upon his own credibility, or lack thereof, to support his claims.

Appellant's App. Vol. II p. 37. Based on our review of the record, we agree with the trial court that the only evidence of Vukadinovich's alleged injuries was his own self-serving testimony.

[35] Vukadinovich introduced medical bills into evidence. However, he failed to introduce any evidence connecting these medical bills to the accident apart from his own self-serving testimony that the bills were connected to the accident. The jury, acting as the trier-of-fact, was not required to believe Vukadinovich's testimony regarding his alleged injuries. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004) ("As a general rule, factfinders are not required to believe a witness's testimony even when it is uncontradicted.");

*Kelsie v. State*, 265 Ind. 363, 367, 354 N.E.2d 219, 222 (1976) ("It is the province of the jury to determine the credibility of witnesses and to determine whether it will believe all, none, or any part of a witness's testimony[.]"); *Buckland v. Reed*, 629 N.E.2d 1241, 1245 (Ind. Ct. App. 1994) ("The mere fact that an injured party is of the opinion that he or she is entitled to be more amply compensated for injuries sustained does not support the proposition that the injured party is entitled to greater damages as a matter of law."). Vukadinovich failed to prove that he was entitled to damages as a result of the accident.

## F. Denial of Motion to Correct Error

[36] Vukadinovich last contends that the trial court abused its discretion in denying his motion to correct error. "In general, we review a trial court's ruling on a motion to correct error for an abuse of discretion." *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), *trans. denied*. However, to the extent the issues raised are purely questions of law, our review is de novo. *Id.*

[37] In arguing that the trial court should have granted his motion to correct error, Vukadinovich asserts that

> Trial courts should not be in the business of protecting corrupt
> insurance companies as [the trial court] did in protecting the
> interests of [Webb's insurance company], which has a
> demonstrated history of corruption[6] … Courts should be in the

---

[6] Nothing in the record even suggests that the trial court acted in a manner aimed at protecting Webb's insurance company and we are not swayed by Vukadinovich's inflammatory and unsubstantiated allegation that said insurance company has a "demonstrated history of corruption."

business of protecting and enforcing the fundamental rights of litigants to have their day in court in an honest proceeding. A trial where the judge makes inappropriate gestures while the plaintiff is conducting voir dire is tantamount to making a mockery of the proceedings and is not a fair trial. A trial where the judge takes it upon himself to mysteriously remove final jury instructions on the sly breeds contempt for the principles of fundamental fairness to a fair trial to which Vukadinovich was entitled to, but didn't get…. Fundamental fairness dictates that Vukadinovich receives a trial where the opposing counsel and judge are not making gestures to the jury while he is addressing the jury, and fundamental fairness dictates that Vukadinovich receives a trial where the judge is not mysteriously removing jury instructions. Because of the aforementioned events that took place in Vukadinovich's trial, justice was not administered as there was no remedy effected by due course of law completely and without denial. This Court should now administer justice in this matter.

Appellant's Br. pp. 53–54. Having concluded that Vukadinovich has failed to prove that the trial court demonstrated bias or committed reversible error with regard to the alleged gestures and did not abuse its discretion in instructing the jury, we conclude that the trial court likewise did not abuse its discretion in denying Vukadinovich's motion to correct error on either of these grounds.

## II. Cross-Appeal Issue

[38] On cross-appeal, Lolkema contends that the trial court erred in refusing her request for attorney's fees pursuant to Indiana Code section 34-50-1-6. Indiana Code section 34-50-1-6(a) provides that

If:

> > (1) a recipient does not accept a qualified settlement offer; and
>
> > (2) the final judgment is less favorable to the recipient than the terms of the qualified settlement offer;
>
> the court *shall* award attorney's fees, costs, and expenses to the offeror upon the offeror's motion.

(Emphasis added). An award of attorney's fees awarded under this section "may not total more than one thousand dollars ($1,000)." Ind. Code § 34-50-1-6(b). A qualified settlement offer must:

> (1) be in writing;
>
> (2) be signed by the offeror or the offeror's attorney of record;
>
> (3) be designated on its face as a qualified settlement offer;
>
> (4) be delivered to each recipient or recipient's attorney of record:
>
> > (A) by registered or certified mail; or
> >
> > (B) by any method that verifies the date of receipt;
>
> (5) set forth the complete terms of the settlement proposed by the offeror to the recipient in sufficient detail to allow the recipient to decide whether to accept or reject it;
>
> (6) include the name and address of the offeror and the offeror's attorney of record, if any; and
>
> (7) expressly revoke all prior qualified settlement offers made by the offeror to the recipient.

Ind. Code § 34-50-1-4.

[39]    The record reveals that Lolkema made a qualified settlement offer to Vukadinovich on September 6, 2017.  The offer, which was signed by Lolkema's counsel, mailed via certified mail and received by Vukadinovich, read as follows:

> Pursuant to IC 34-50-1, et seq. the Defendant hereby makes a qualified settlement offer in the amount of $1.00 (one dollar) in the above captioned case.  All other offers of settlement are hereby revoked.  The settlement will resolve all claims and causes of action.
>
> Payment will be made within 60 days of acceptance.  Your acceptance must be in writing and received within 30 days of service of this offer.  After 30 days, the offer is hereby withdrawn without further notice, and we will proceed to verdict.

Appellant's App. Vol. II p. 105.  It is undisputed that Vukadinovich rejected the settlement offer and that the final judgment is less favorable to him than the terms of the qualified settlement offer.  However, Lolkema's attorney's address is not clearly visible on the copies of the qualified settlement offer included in the record.  Lolkema's counsel testified at the hearing on Vukadinovich's motion to correct error that the offer was sent on his firm's letterhead but did not testify that the letterhead contained his firm's address.[7]  Because the record lacks proof that the qualified settlement offer received by Vukadinovich

---

[7] A subsequent qualified settlement offer was sent to Vukadinovich on May 15, 2019, which included Lolkema's counsel's address.  However, the record does not contain proof of receipt of this letter by Vukadinovich.

contained Lolkema's counsel's address as required by Indiana Code section 34-50-1-4(6), we conclude that the trial court did not err in denying Lolkema's request for attorney's fees.

[40]     The judgment of the trial court is affirmed.

Vaidik, J., and May, J., concur.